Harry W. OBORNE and Anthony J.
Allegretti, Plaintiffs–Appellees,

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF DOUGLAS
COUNTY, Colorado, Defendant–Appellant.

No. 85CA1237.

Colorado Court of Appeals,
Div. III.

Oct. 20, 1988.
Certiorari Pending Feb. 24, 1989
(89 SC 67).

Gerald D. Sjaastad, Colorado Springs, for plaintiffs-appellees.

James K. Kreutz and Associates, James K. Kreutz, Daniel J. Torpy, Englewood, for defendant-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Adonis A. Neblett, Asst. Atty. Gen., Denver, for amicus curiae Colorado Oil and Gas Conservation Comn.

CRISWELL, Judge.

This appeal by the Board of County Commissioners of Douglas County (Board) from the judgment of the district court reversing the Board's denial of plaintiffs' application for a permit to drill an exploratory oil well requires us to consider the extent to which the Oil and Gas Conservation Act, § 34–60–101, et seq., C.R.S. (1984 Repl.Vol. 14), limits a county's authority to regulate the operation of an oil or gas well by means of local land use enactments. We conclude that the Board had no authority to impose upon the operation of plaintiffs' contemplated well the conditions which it attempted to impose, and therefore, we affirm the trial court's judgment.

Douglas County has adopted a zoning resolution in reliance upon the provisions of § 30–28–101, et seq., C.R.S. (1986 Repl.Vol. 12A). Among its provisions are those that establish a procedure for the Board, after a public hearing, to issue a permit for a "use by special review." The purpose for requiring such a procedure is to assure that the intended use will be "in harmony with the character of the surrounding neighborhood and [will] comply with the general purpose" of the county's zoning resolution.

One of the uses that may be authorized after this special review is an oil or gas drilling operation in the A–1 (agricultural) zone district. Such a use must comply with four criteria specified in the resolution (all of which plaintiffs' well would comply with), and, in addition, the resolution authorizes the Board to impose "conditions and safeguards," "additional requirements," and "special considerations" as conditions to its approval of the use.

Plaintiffs have an oil and gas lease upon some 2100 acres in the county's unincorporated territory and sought a special use permit to drill three exploratory oil wells on the parcel. They intended initially to drill only one well and to determine the results obtained from that one before drilling the other two. Their application under the county's resolution covered all three

wells, but they requested a permit only for the first, intending to supplement their application and to receive further permits when they desired to commence the drilling of the other two.

Extensive information upon plaintiffs' intended drilling operation was presented by plaintiffs, various private individuals, employees of the Colorado Oil and Gas Conservation Commission (Commission), county employees, and other witnesses in an extended hearing before the Board. At the end of that hearing, the Board denied plaintiffs' application on the grounds that plaintiffs had refused to meet certain conditions and safeguards that were required to assure that the drilling operation would be in harmony with the neighborhood and "to promote the health, safety, convenience, aesthetics, and welfare of the present and future residents" of the county. These conditions and requirements consisted of the following:

—A dirt berm for sediment ponds;

—Reclamation immediately after drilling operations;

—A bond to cover (1) reclamation, (2) damage to surrounding water supplies, and (3) indemnity for failure to make adequate provision for the disposal of liquid waste;

—Sufficient assurances that a spill or discharge into a nearby creek would not impact upon downstream water users;

—A suitable fire protection plan;

—Cement casing in the well to the base of any underground water supply;

—Independent monitoring and technical advice for the drilling and plugging operation;

—Adequate protection to underground water supplies; and

—Information relative to the second and third wells that plaintiffs intended to drill.

Plaintiffs sought judicial review of the Board's action and declaratory relief under C.R.C.P. 57 and 106(a)(4). Thereafter, the Commission, the State Board of Land Commissioners, and the Independent Petroleum Association of Mountain States were allowed to appear before the trial court as *amici curiae*. These parties all argued, among other things, that the Board's attempt to impose the described conditions and requirements upon an oil drilling operation was an infringement upon the Commission's jurisdiction and, consequently, was void.

The district court, after reviewing the record, concluded, among other things, that the Board had no authority to base its denial upon the conditions and requirements outlined by it because none of them related to proper land use considerations, but rather all involved matters pertaining to the conduct of drilling operations over which the Commission has exclusive jurisdiction. Thus, it reversed the Board's decision denying plaintiffs' application for a special use permit, entered a declaratory judgment that such denial constituted a taking of plaintiffs' property without compensation, and remanded the cause to the Board for further proceedings.

## I.

A Colorado county:

"is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents, but rather is a political subdivision of the state existing only for the convenient administration of the state government." *Board of County Commissioners v. State Board of Social Services*, 186 Colo. 435, 528 P.2d 244 (1974). *See Beaver Meadows v. Board of County Commissioners*, 709 P.2d 928 (Colo.1985).

Thus, except to the extent that the Colorado Constitution may authorize a county to act upon a subject, *see, e.g.,* Colo. Const. art. XIV, § 16, a county has only those powers that are expressly, or by necessary implication, delegated to it by the General Assembly. *Pennobscot, Inc. v. Board of County Commissioners*, 642 P.2d 915 (Colo.1982).

The authority of a county to regulate land use in its unincorporated territory by means of a zoning resolution that utilizes the concept of zone districts, such as is

involved here, is grounded upon three separate statutes.

The first, § 30–28–101, et seq., C.R.S. (1986 Repl.Vol. 12A), grants to a county the authority to adopt zoning resolutions designed to regulate the use of land and structures for trade, industry, residence, recreation, and other purposes. Such regulations must promote the "health, safety, morals, convenience, order, propriety, or welfare of the present and future inhabitants of the state." Section 30–28–115, C.R.S. (1986 Repl.Vol. 12A).

■ In addition, the General Assembly has also adopted the Local Government Land Use Control Enabling Act, § 29–20–101, et seq., C.R.S. (1986 Repl.Vol. 12A), whose purpose is to "provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions." Section 29–20–102. This statute generally authorizes counties to regulate land use to accomplish multiple purposes, including the lessening of the impact of various uses on the surrounding areas. Sections 29–20–102 and 29–20–104, C.R.S. (1986 Repl.Vol. 12A).

However, this statute also expressly provides that nothing in its terms is intended "to diminish the planning functions of the state," § 29–20–102, C.R.S. (1986 Repl.Vol. 12A), and that, if there are "other procedural or substantive requirements for the ... regulation of the use of land ... such [other] requirements shall control." Section 29–20–107, C.R.S. (1986 Repl.Vol. 12A). Thus, this statute provides to a county no basis for disregarding a limitation upon its authority that is to be found in another statute. *See Pennobscot, Inc. v. Board of County Commissioners, supra.*

Neither of these two statutes make any specific reference to oil and gas wells or to the right of counties to regulate their operation.

■ A third statute, § 24–65.1–101, et seq., C.R.S. (1982 Repl.Vol. 10), grants to counties the authority to designate areas and activities of state interest and to regulate such areas or activities in conjunction with other levels of government. However, § 24–65.1–202(1)(d), C.R.S. (1982 Repl. Vol. 10), is specific in prohibiting an area of oil and gas development from being designated as an area of state interest, "unless the state oil and gas conservation commission identifies such area for designation." The record here contains no evidence of the Commission's identification of plaintiffs' property as such an area. Thus, since the exercise of the powers granted to local governments under this statute is dependent upon such an identification and designation, this statute is not applicable to this controversy.

■ Nevertheless, we assume, arguendo, that the other two statutes, which grant generally broad authority to the Board to regulate land uses, are sufficient, considered alone, to authorize it to place requirements of the nature that it sought to impose here upon the operation of oil and gas wells. *See Beaver Meadows v. Board of County Commissioners, supra.* The question, therefore, is whether the Oil and Gas Conservation Act, § 34–60–101, et seq., C.R.S. (1984 Repl.Vol. 14), limits this authority.

## II.

The Oil and Gas Conservation Act (the Act) was first adopted in 1951, Colo.Sess. Laws 1951, ch. 230, at pp. 650–662, and has been amended several times since that date. Its stated purpose is to encourage the development, production, and utilization of the natural resources of oil and gas in this state, to prevent waste, and to allow each owner of an interest in an oil or gas pool to obtain an equitable share of the pool's production. Section 34–60–102, C.R. S. (1984 Repl.Vol. 14).

The Act created the Commission, § 34–60–104, C.R.S. (1984 Repl.Vol. 14), delegates to it all necessary powers to carry out the provisions of the Act, and specifically rescinds and withdraws the authority of "any other state officer, board or commission" to administer other laws relating to the conservation of oil and gas. Section 34–60–105, C.R.S. (1984 Repl.Vol. 14).

The Act authorizes the Commission to require that no drilling operations be commenced until it issues a permit. Section 34–60–106(1)(f), C.R.S. (1984 Repl.Vol. 14). It grants to the Commission the authority to regulate the "drilling, producing, and plugging of wells and all other operations for the production of oil or gas"; the shooting and chemical treatment of wells; the spacing of wells; and the "disposal of salt water and oil field wastes." The Commission is granted the specific authority to require the drilling, casing, operation, and plugging of "exploratory wells" in such a manner as to prevent, among other things, "the pollution of fresh water supplies by oil, gas, salt water, or brackish water," and "cave-ins, seepage and fires." Section 34–60–106(1)(c), (2)(a), and (d), C.R.S. (1984 Repl.Vol. 14). Finally, the Commission may require the operator to give security to assure that every exploratory well is plugged properly, and it must require additional security to assure that any lessee will "restore the condition of the land as nearly as possible to its condition at the beginning of the lease." Section 34–60–106(1)(d) and (3.5), C.R.S. (1984 Repl.Vol. 14).

Consonant with the authority granted by the Act, the Commission has adopted extensive regulations covering these subjects. These regulations control the location of wells, the depth of casings, the disposal of waste water and other substances so as to prevent the pollution of any waters, and require the posting of security to assure proper plugging of the well and restoration of the ground. *See* Code Colo.Reg. 404–1 §§ 101–606.

### III.

Each of the several enumerated conditions contained in the Board's denial of plaintiffs' application reflects a concern that plaintiffs' operation would contaminate a neighboring water supply, or present a fire danger, or not reclaim the land after the drilling operation, or not provide security to assure adequate plugging and reclamation. However, each of the conditions outlined by the Board related to a subject which the Commission has been delegated authority to regulate.

The Act grants to the Commission specific jurisdiction to prevent pollution of water supplies, to prevent fires, to require reclamation of the land, and to require security from the operator to accomplish these purposes. Under these circumstances, therefore, we conclude that the Board had no authority to impose the described conditions upon the issuance of the requested permit or to deny the permit because plaintiffs refused to agree to such conditions. To the extent that plaintiffs' drilling operations may present problems in these areas, the General Assembly has determined that it is the Commission, and not the counties, that should address those problems.

Where the General Assembly has delegated a general power to a local government, its power to act may, nevertheless, be restricted by a legislative grant of power over a specific subject to another agency. *See Golden v. Ford,* 141 Colo. 472, 348 P.2d 951 (1960) (because of comprehensive statute on labor relations, statutory city's power to control disturbances does not extend to regulation of picketing in labor dispute); *U.S. Pollution Control, Inc. v. Board of County Commissioners,* 714 P.2d 511 (Colo.App.1985) (comprehensive statute on hazardous waste disposal contains exclusive procedures for regulation, limiting county authority under county zoning statute).

Moreover, where the comprehensive statute is intended to be the exclusive means of regulation, the issue whether a "conflict" exists between a local regulation and the statutory scheme is irrelevant. This is so because the "mere enactment of legislation by the General Assembly governing a particular subject matter may evince, in some cases, an intent by the state to preempt the field in that area." *Dempsey v. Denver,* 649 P.2d 726 (Colo.App.1982) (state legislation governing local employees under Social Services Department restricts home rule city and county from establishing such employees' wage rate).

Here, the comprehensiveness of the provisions of the Act, and the Commission's

regulations issued pursuant thereto, and the purposes sought to be accomplished by them, as well as the absence from the Act's terms of any reference to local zoning or other regulations, convince us that it was the intent of the General Assembly to vest in the Commission the sole authority to regulate those subjects addressed by the Act and to bar any local regulation addressing those subjects. Thus, since the Board denied plaintiffs' application solely because of plaintiffs' alleged failure to agree to the Board's proposed edicts upon matters over which the Commission is granted exclusive regulatory authority, such denial was improper.

A contrary conclusion is not required by this court's opinion in *C & M Sand & Gravel v. Board of County Commissioners*, 673 P.2d 1013 (Colo.App.1983), which determined a county's zoning authority in light of the Mined Land Reclamation Act, § 34–32–101, et seq., C.R.S. (1984 Repl.Vol. 14). There, the statute required the applicant for a state permit to demonstrate that it had complied with "all ... local ... laws," and it authorized the state agency to deny a permit if the contemplated operation would be "in violation of any ... county ... zoning or subdivision regulations." Section 34–32–115(4) and (4)(e), C.R.S. (1984 Repl.Vol. 14). The Act here contains no similar provision.

Further, in *C & M Sand & Gravel*, the county had made no attempt to intrude into the state agency's jurisdiction. Unlike the Board's actions here, the county there based its decision upon land use considerations over which the state agency had been granted no jurisdiction.

## IV.

After the Board made its decision in this case, the General Assembly amended the Act so as to grant to the Commission, in some instances, the authority to adopt regulations to protect the health, safety, and welfare of any person at the well site. Section 34–60–106(10), C.R.S. (1987 Cum. Supp.). This amendment also granted the Commission the *additional* authority to promulgate regulations "to protect the health, safety, and welfare of the general public in the drilling, completion, and oper-

ation of oil and gas wells and production facilities." Section 34–60–106(11), C.R.S. (1987 Cum.Supp.) In light of the breadth of this latter provision, we asked the parties here to provide to us their views as to whether this provision left any room for local legislation, or for the requirement of a local permit, and, if not, whether this amendment rendered the issues involved in this appeal moot.

In response to this request, the Board has conceded that the amendment to the Act prohibits it from addressing any subject over which the Commission has regulatory jurisdiction. It now asserts, therefore, that this amendment rendered this appeal moot. We disagree.

As plaintiffs observe, despite the Board's concession that it no longer has any basis to continue to deny to them the right to make use of their leasehold interest, the fact that the Board previously denied this right to them may well have an impact upon the parties' rights and obligations in the future. *See First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). Thus, since this judgment may have significant collateral consequences, we cannot conclude that this appeal has been rendered moot by the Act's amendment. *See Street v. New York*, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

However, since the Board has conceded that it no longer possesses the authority to deny a permit to plaintiffs, it would be a futile act to have this matter remanded to the Board for further consideration, as the district court ordered. Rather, the Board should be directed to grant to plaintiffs the permit applied for.

The judgment is affirmed and the cause is remanded to the district court with directions to remand it to the Board with directions to issue to plaintiffs the permit applied for by them.

TURSI and JONES, JJ., concur.