**BOARD OF COUNTY COMMISSIONERS, LA PLATA COUNTY, Colorado, Petitioner,**

v.

**BOWEN/EDWARDS ASSOCIATES, INC., Respondent.**

No. 90SC516.

Supreme Court of Colorado,
En Banc.

June 8, 1992.

K. Kane Graves, Shand, McLachlan, Newbold & Spear, P.C., Michael E. Mc-

Lachlan, Bryson P. Burnham, Durango, for petitioner.

Dugan & Associates, Thomas P. Dugan, Thornton W. Price, III, Lon W. Abadie, Durango, for respondent.

Marion A. Brewer, Denver, J. Mark Hannen, Castle Rock, Don K. Deford, Glenwood Springs, Maurice Lyle Dechant, Grand Junction, Lee D. Morrison, Greeley, Robert J. Lowe, Brighton, for amicus curiae Colorado Counties, Inc.

Gorsuch, Kirgis, Campbell, Walker & Grover, William A. Keefe, Hugh V. Schaefer, Kenneth A. Wonstolen, Denver, for amicus curiae Colorado Petroleum Ass'n.

Lohf, Shaiman & Ross, P.C., David G. Ebner, J. Michael Morgan, Denver, for amicus curiae Colorado Oil and Gas Ass'n and Independent Petroleum Ass'n of the Mountain States.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Timothy J. Monahan, Asst. Atty. Gen., Denver, for amicus curiae Colorado Oil and Gas Conservation Com'n.

William Perry Pendley, Steven J. Lechner, Denver, for amicus curiae Mountain States Legal Foundation, John T. Jolly, and Cheryl A. Jolly.

Justice QUINN delivered the Opinion of the Court.

This case raises the following two questions: whether in an action for declaratory and injunctive relief Bowen/Edwards Associates (Bowen/Edwards), a corporate entity engaged in oil and gas development and operations in La Plata County, has standing to challenge the validity of the county's land-use regulations pertaining to oil and gas activities within the county without first filing a permit-application with the county and obtaining administrative approval of the application; and whether the Colorado Oil and Gas Conservation Act, §§ 34–60–101 to –126, 14 C.R.S. (1984 & 1991 Supp.), completely preempts La Plata County's authority to enact land-use regulations for oil and gas operations within the county. In *Bowen/Edwards Associates, Inc. v. Board of County Comm'rs of La Plata County*, 812 P.2d 656 (Colo.App. 1990), the court of appeals held that Bowen/Edwards has standing to challenge La Plata County's land-use regulations and that the Oil and Gas Conservation Act totally preempts the county's land-use authority over all aspects of oil and gas development and operations within the county. We granted certiorari to review the decision of the court of appeals. We now affirm that part of the judgment which accords standing to Bowen/Edwards, and we reverse that part of the judgment which holds that the Oil and Gas Conservation Act prohibits La Plata County from exercising any aspect of its land-use authority over oil and gas development and operations within the county. We accordingly remand the case for further proceedings.

I.

The Oil and Gas Conservation Act and the La Plata County Regulations provide the legal framework for resolving the questions before us.

A.

The declared purposes of the Oil and Gas Conservation Act are as follows: to promote the development, production, and utilization of the natural resources of oil and gas in the state; to protect public and private interests against the evils of waste; to safeguard and enforce the coequal and correlative rights of owners and producers in a common source or pool of oil and gas so that each may obtain a just and reasonable share of production therefrom; and to permit each oil and gas pool to produce up to its maximum efficient rate of production subject to the prohibition of waste and subject further to the enforcement of the coequal and correlative rights of common-source owners and producers to a just and equitable share of profits.[1]  § 34–60–

---

[1]. An additional purpose of the Oil and Gas Conservation Act is to implement federal natural gas regulations and price controls. § 34–60–102(2), 14 C.R.S. (1984).

102(1), 14 C.R.S. (1984). To effectuate these purposes, the legislature established the Oil and Gas Conservation Commission and vested it with the following general powers:

The commission has jurisdiction over all persons and property, public and private, necessary to enforce the provisions of this article, and has the power to make and enforce rules, regulations, and orders pursuant to this article, and to do whatever may reasonably be necessary to carry out the provisions of this article. Any delegation of authority to any other state officer, board, or commission to administer any other laws of this state relating to the conservation of oil or gas, or either of them, is hereby rescinded and withdrawn and such authority is unqualifiedly conferred upon the commission, as provided in this section. Any person, or the attorney general on behalf of the state, may apply for any hearing before the commission, or the commission may initiate proceedings upon any question relating to the administration of this article, and jurisdiction is conferred upon the commission to hear and determine the same and enter its rule, regulation, or order with respect thereto.

§ 34–60–105(1), 14 C.R.S. (1984).

In addition to issuing permits for oil and gas drilling operations, the commission is authorized to regulate the drilling, production, and plugging of wells, the shooting and chemical treatment of wells, the spacing of wells, and the disposal of salt water and oil field wastes, § 34–60–106(2), 14 C.R.S. (1984), as well as to limit production from any pool or field for the prevention of waste and to allocate production from a pool or field among or between tracts of land having separate ownership on a fair and equitable basis so that each tract will produce no more than its fair and equitable share, § 34–60–106(3)(a), 14 C.R.S. (1984). The Oil and Gas Conservation Act contains an extensive list of technical requirements relating to developmental and operational aspects of oil and gas production which the commission is authorized to enforce.[2]

In 1985 the General Assembly amended the Oil and Gas Conservation Act to provide the commission with additional powers. Included within the 1985 amendments, as pertinent here, is the commission's authority to "promulgate rules and regulations to protect the health, safety, and welfare of the general public in the drilling, completion, and operation of oil and gas wells and production facilities." § 34–60–106(11), 14 C.R.S. (1991 Supp.).

**B.**

The Local Government Land Use Control Enabling Act of 1974, §§ 29–20–101 to –104, 12A C.R.S. (1986 & 1991 Supp.), states that "the policy of this state is to clarify and provide broad authority to local governments to plan for and regulate the use of land within their respective jurisdictions," § 29–20–102, 12A C.R.S. (1986). The County Planning Code, §§ 30–28–101 to –137, 12A C.R.S. (1986 & 1991 Supp.), authorizes a county planning commission to enact a zoning plan for all or any part of the unincorporated territory within the county, § 30–28–111, 12A C.R.S. (1986). In 1988 the Board of County Commissioners of La Plata County, acting pursuant to these statutes, enacted regulations entitled

___

2. Some of the technical requirements which the commission can enforce pertain to the following activities: the identification of ownership of oil and gas wells, producing leases, tanks, plants, and structures; the making and filing of copies of oil logs, surveys, and reports on well location, drilling, and production; the drilling, casing, and plugging of seismic holes or exploratory wells in order to prevent the escape of oil or gas from one stratum into another, the intrusion of water into oil or gas stratum, the pollution of fresh water supplies by oil, gas, salt water, or brackish water, and measures to prevent blowouts, explosions, cave-ins, seepage, and fires; the furnishing of reasonable security conditioned for drilling operations, land restoration, and the plugging of each exploratory or abandoned well; the separation of oil production into gaseous and liquid hydrocarbons and the proper measurement of each element; the establishment of proper gas-oil and water-oil well ratios; the issuance of certificates of clearance in connection with the transportation and delivery of oil and gas; the metering of oil and gas at transmission lines, gathering systems, and refineries; and the posting of security for drilling operations and land restoration. § 34–60–106(1)(a) to (j) and (3.5), 14 C.R.S. (1984).

"Oil and Gas Regulations of La Plata County, Colorado 1988" (hereinafter cited as County Regulations). The county regulations were made part of La Plata County's Land Use Code on October 18, 1988, and became effective on December 1, 1988. La Plata County Resolution No. 1988–53.

The county regulations apply to "lands within the unincorporated area of La Plata County with the exception of those lands where the County's jurisdiction is preempted by Federal or State law, or by Southern Ute Indian Tribal jurisdiction." County Regulation § 6.104. The regulations contain the following statement of purpose:

> These regulations are enacted to protect and promote the health, safety, morals, convenience, order, prosperity or general welfare of the present and future residents of La Plata County. It is the County's intent by enacting these regulations to facilitate the development of oil and gas resources within the unincorporated area of La Plata County while mitigating potential land use conflicts between such development and existing, as well as planned, land uses. It is recognized that under Colorado law the surface and mineral estates are separate and distinct interests in land and that one may be severed from the other. Owners of subsurface mineral interests have certain legal rights and privileges, including the right to use that part of the surface estate reasonably required to extract and develop their subsurface mineral interests, subject to compliance with the provisions of these regulations and any other applicable statutory and regulatory requirements. Similarly, owners of the surface estate have certain legal rights and privileges, including the right to have the mineral estate developed in a reasonable manner and to have adverse land use impacts upon their property, associated with the development of the mineral estate, mitigated through compliance with these regulations. Should it be established by competent evidence that a proposed major facility, as defined herein, cannot be operated in compliance with these regulations, County land use approval for such a facility may be denied.

County Regulation § 6.103.

The regulations categorize oil and gas facilities into minor facilities, County Regulation § 6.106(a), minor facilities requiring special mitigation processing, County Regulation § 6.106(b), and major facilities, County Regulation § 6.107. Each category is subject to distinct application requirements relating to information and/or documentation concerning land-use impact. Depending on the type of application, administrative approval by various levels of county government is required prior to the commencement of any construction, installation, and operation of any oil and gas facility within the county. Minor facilities and minor facilities requiring special mitigation processing are subject to administrative approval by the county planning department. County Regulation § 6.106(a) & (b). Approval of major facilities requires an initial review and a public hearing before the County Planning Commission, which recommends approval or denial of the facility, followed by a further review and hearing before the Board of County Commissioners, which has the final approval authority. County Regulation § 6.107(e) & (f).

The regulations state that it is unlawful to construct or install any oil and gas facility within the unincorporated areas of the county not subject to state, federal, or Southern Ute Tribal jurisdiction, "unless administrative approval has been granted by [the] Planning [department] or ... by the Board [of County Commissioners]." County Regulation § 6.115(a).[3] If the

---

**3.** A section of the regulations sets forth three categories of performance standards that all oil and gas facilities must meet as a condition for county approval. The first category contains "land use coordination standards," the purpose of which is "to minimize conflicts between differing land uses." County Regulation § 6.202. The land use coordination standards require

noise and nuisance mitigation measures and setbacks of wells from residential buildings. The regulations provide that if compliance with the setback standards promulgated by the Oil and Gas Conservation Commission makes compliance with the county setback standards impossible, the applicant need not comply with the county setback requirements. County Regula-

Board of County Commissioners finds, based upon competent evidence, that compliance with the regulations is impossible, the Board may grant a special exception for a period not to exceed six months, at the end of which the Board may either extend the special exception, require the facility to comply with the performance standards, or revoke the special exception. County Regulations § 6.205. The penalty for violating the county regulations is a fine of not more than $100, imprisonment in the county jail for not more than ten days, or both fine and imprisonment. County Regulation § 6.115(b). The regulations also empower the county attorney to file a civil action to prevent or abate any structure erected or used in violation of the regulations. County Regulation § 6.115(c).

## C.

On December 20, 1988, Bowen/Edwards, along with various owners of oil and gas interests in the county and several oil and gas consulting and servicing firms, filed a complaint for declaratory and injunctive relief against the Board of County Commissioners of La Plata County (La Plata County). The complaint sought a declaratory judgment that the Oil and Gas Conservation Act conferred exclusive authority on the Oil and Gas Conservation Commission to regulate oil and gas development and operations throughout the state and thereby preempted La Plata County's Oil and Gas Regulations. The complaint also sought injunctive relief against the county officials from enforcing the county regulations. In answering the complaint, La Plata County asserted that the Oil and Gas Conservation Act did not preempt all local land-use regulations and that Bowen/Edwards and the other plaintiffs lacked standing to challenge the county regulations because they had not applied for and been denied a county permit for their activities and operations within the county. The plaintiffs filed a motion for a judgment on the pleadings, and La Plata County, in response, filed a motion for summary judgment or in the alternative a motion to dismiss based on the plaintiffs' lack of standing. The trial court granted La Plata County's motion to dismiss for lack of standing, ruling as follows:

Plaintiffs have not shown *how* the regulations affect them or that they will pursue and be denied a permit for oil and gas production. Plaintiffs may cease oil and gas business tomorrow, or [the county] may issue a permit under the regulations as plaintiffs' operations presently stand, with no additional burdens on plaintiffs.... There is not yet a contro-

tions, § 6.202(a)(3). They also contain spacing requirements in plotted subdivisions for minor facilities and major facilities. County Regulation § 6.202(b).

The second category of performance standards contains "environmental quality standards," which are intended "to balance economic development with protection of the environment and natural resources." County Regulation § 6.203. The environmental quality standards require operators of oil and gas facilities to minimize the visual impact of the facilities, to provide for mitigation measures in order to lessen the impact of the facilities on wildlife, and to identify the source of fresh water to be used at the facility and the methods used to deal with waste water. *Id.*

The third category of performance standards is the "surface disturbance standards," which are intended "to encourage minimal damage to surface activities and surface conditions." County Regulation § 6.204. The surface disturbance standards require minor and major facilities to locate so as "to use only as much of the surface as is reasonably necessary for the opera-

tion of [the] facility and to avoid the unreasonable loss of agricultural land." County Regulation § 6.204(a). They also require proper improvement of access roads to accommodate increased traffic to the facility, the removal of all construction-related debris after the facility becomes operational, the maintenance of the facility free of debris and excess materials during the operation, the prohibition against burning of trash without prior notice to the surface owners and the fire district, and the revegetation and reclamation of disturbed lands. *Id.*

Finally, the performance standards allow an applicant to request special exceptions to the standards based on circumstances unique to the applicant's facility, including, but not limited to, the following: topographic characteristics of the site; duration of use of the facility; proximity of occupied structures to the facility; ownership status of adjacent and/or affected land; construction of adequate infrastructure to serve the project; and planned replacement or upgrading of facility equipment. County Regulation § 6.205.

versy in this case upon which to base a factual record, and the case is not ripe for review. (Emphasis in original).

The plaintiffs then moved to amend the judgment, arguing that La Plata County lacked authority to regulate oil and gas development and operations within the county and that, consequently, the county regulations requiring county approval of an application for oil and gas activities are illegal and constitute a threat to the plaintiffs' legal interests. The district court denied the plaintiffs' motion to amend, again ruling that the plaintiffs failed to demonstrate that the county regulations caused them some injury in fact. The court also addressed the preemption issue and ruled that the Oil and Gas Conservation Act did not totally preempt La Plata County's regulatory authority over land use for persons and entities engaged in oil and gas development and operations within the county.

Bowen/Edwards appealed the judgment to the court of appeals.[4] The court of appeals concluded that the complaint demonstrated that Bowen/Edwards would be adversely affected by compliance with the county's oil and gas regulations, that it would suffer economic injury due to the permit fees and bond requirements of the regulations, and that it would be subject to criminal sanctions in the event it proceeded with oil and gas development without county approval. *Bowen/Edwards*, 812 P.2d at 658. The court of appeals also addressed the preemption issue and concluded that the Oil and Gas Conservation Act demonstrates a legislative intent to vest sole authority to regulate oil and gas development and operations in the Oil and Gas Conservation Commission, reasoning as follows:

> By law, the Commission has the authority to "promulgate rules and regulations to protect the health, safety, and welfare of the general public in the drilling, completion, and operation of oil and gas wells and production facilities." Section 34–60–106(11), C.R.S. (1989 Cum. Supp.). The statute further provides

that the grant to the Commission of any specific power shall not be construed to be in derogation of any of the general powers granted by the Act. Section 34–60–106(4), C.R.S. (1984 Repl.Vol. 14).

> We conclude that these two statutory subsections give the Commission broad authority to regulate all phases of oil and gas development, including regulation of the impact of such development on the surrounding community. Having thus preempted the field, the General Assembly has left no room for local regulation, and the regulations adopted by the Board are invalid.

812 P.2d at 659. Having thus resolved the issue of standing and preemption, the court of appeals reversed the trial court's dismissal of the case and remanded the case with directions to reinstate the complaint and enter a judgment granting the declaratory and injunctive relief sought by Bowen/Edwards.

We granted La Plata County's petition for certiorari to determine whether the court of appeals erred in ruling that Bowen/Edwards has standing to challenge La Plata County's land-use regulations and whether the Oil and Gas Conservation Act completely preempts the county's regulations.

## II.

The question of standing involves a consideration of whether a plaintiff has asserted a legal basis on which a claim for relief can be predicated. The answer to the standing issue requires an analysis of whether the plaintiff has alleged an injury in fact and, if so, whether the injury is to a legally protected or cognizable interest. *Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977); *accord Denver Center for the Performing Arts v. Briggs*, 696 P.2d 299, 304 (Colo.1985); *Cloverleaf Kennel Club, Inc. v. Colorado Racing Comm'n*, 620 P.2d 1051, 1055–58 (Colo. 1980). "These two considerations provide

---

**4.** The other plaintiffs in the trial court—the owners of oil and gas interests and several oil and gas consulting and servicing firms—did not appeal the trial court's dismissal of the complaint to the court of appeals.

the framework for determining whether the asserted legal basis for a claim—whether constitutional, statutory, or otherwise—can properly be understood as granting [the plaintiff] a right to judicial relief." *O'Bryant v. Public Utilities Comm'n*, 778 P.2d 648, 652 (Colo.1989). We thus must determine in this case whether Bowen/Edwards has standing to seek either declaratory or injunctive relief notwithstanding its failure to apply for an oil and gas permit from La Plata County.

### A.

■ The Uniform Declaratory Judgments Law, §§ 13–51–101 to –115, 6A C.R.S. (1987), is a remedial statute calculated to afford parties judicial relief from uncertainty and insecurity with respect to their rights and legal relations. A plaintiff seeking a declaratory judgment on the validity of a regulatory scheme need not violate the regulation and thus become subject to punishment "in order to secure the adjudication of uncertain legal rights." *Community Tele–Communications, Inc. v. Heather Corp.*, 677 P.2d 330, 334 (Colo. 1984). What is required for purposes of satisfying the standing requirement is that the plaintiff demonstrate that there is an existing legal controversy that can be effectively resolved by a declaratory judgment, and not a mere possibility of a future legal dispute over some issue. *See Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164, 168 (Colo.1988); *Conrad v. City and County of Denver*, 656 P.2d 662, 668 (Colo.1983).

■ The injury-in-fact element of standing is established when the allegations of the complaint, along with any other evidence submitted on the issue of standing, establishes that the regulatory scheme threatens to cause injury to the plaintiff's present or imminent activities. *O'Bryant*, 778 P.2d at 653. Once the plaintiff has sufficiently alleged or demonstrated an injury in fact, it then must be determined whether the injury is to a legally protected interest—that is, whether the plaintiff's interest emanates from a constitutional, statutory, or judicially created rule of law that

entitles the plaintiff to some form of judicial relief. *See, e.g., State Bd. for Community Colleges and Occupational Educ. v. Olson*, 687 P.2d 429, 435 (Colo.1984); *Conrad*, 656 P.2d at 668. "An affirmative answer to this question does not amount to an adjudication on the merits of the case, but rather means simply that the party seeking judicial relief has stated a claim by demonstrating the existence of a legal right or interest which has been arguably violated by the conduct of the other party." *O'Bryant*, 778 P.2d at 653.

■ For purposes of the threshold requirement of standing, Bowen/Edwards made an adequate showing that the La Plata County regulations will have an adverse effect on its present plans for oil and gas development within the unincorporated areas of the county to which the regulations apply. The county's documentation requirements and performance standards, as well as other regulatory requirements, will undoubtedly force Bowen/Edwards to expend additional time and money in seeking county approval of their present or imminent activities. The effect of Bowen/Edwards' failure to apply for a permit under the circumstances present here does not create a factual void such that a judicial resolution of the controversy would be merely advisory in character. Bowen/Edwards also made a threshold showing that the application of the county regulations to its activities could impede its ability to develop and produce oil and gas in La Plata County in conformity with the provisions of the Oil and Gas Conservation Act. While Bowen/Edwards' showing was less than formidable, we are satisfied that it was adequate to withstand a motion to dismiss for lack of standing.

In arguing that Bowen/Edwards' claim lacks standing because it did not apply for a county permit, La Plata County relies on our decision in *Mount Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 240 (Colo.1984). The Board's reliance on *Mount Emmons* is misplaced, as that case was decided in a procedural context substantially different from the instant case. In *Mount Emmons Mining*, the

**1054**

town of Crested Butte enacted a watershed district permit ordinance that required all persons engaged in certain activities, including surface and subsurface mining, to obtain a permit and to show that the proposed activity did not create a foreseeable risk of pollution to the town water supply. 690 P.2d at 235. The ordinance contained an exemption for activities which were in progress. *Id.* Without first seeking a watershed permit, AMAX Mining Company filed a declaratory action against the town claiming, *inter alia,* that the ordinance was preempted by other state laws and was an ultra vires act of a home-rule municipality. *Id.* at 237. The trial court entered a summary judgment in favor of AMAX, ruling that the ordinance was preempted by state and federal laws and was in conflict with the state constitutional right to divert unappropriated water from a natural stream. *Id.* at 237–38. We reversed the summary judgment on the basis that there were unresolved factual questions concerning the possible applicability of the "in progress exemption" to AMAX's activities, the nature and extent of any injury that AMAX would sustain based on the town's classification of AMAX's permit application, and any permit conditions that con-

ceivably might conflict with state and federal laws. *Id.* at 241–42. Contrary to the Board's contention, our reversal of the summary judgment in *Mount Emmons Mining* was not based on AMAX's failure to first seek and be denied a permit before challenging the validity of the watershed ordinance, but rather stemmed from the number of unresolved factual issues that rendered the case inappropriate for resolution by summary judgment.[5] We conclude that Bowen/Edwards has standing to seek a declaration on the validity or invalidity of the county's oil and gas regulations and their effect on the plaintiffs' oil and gas activities within the county.

### B.

The standing requirements for injunctive relief against the enforcement of a regulatory scheme are similar to those for declaratory relief. A plaintiff seeking injunctive relief satisfies the threshold requirement of standing by showing that the action complained of has caused or has threatened to cause imminent injury to an interest protected by law. *Colorado General Assembly v. Lamm,* 700 P.2d 508, 516

---

**5.** The Board of County Commissioners also relies on *California Coastal Comm'n v. Granite Rock Co.,* 480 U.S. 572, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987), for the proposition that Bowen/Edwards cannot challenge the La Plata County regulations until they have applied for a county permit and demonstrated that all of the possible combinations of permit conditions applicable to their operations conflict with state regulations. We do not read *Granite Rock* so broadly. The Granite Rock Company held unpatented mining claims on federally owned lands in the California coastal bluffs. When informed by the California Coastal Commission that a permit was required for its mining activities, Granite Rock, without seeking a permit, filed a declaratory judgment action in the federal district court, in which it sought a declaration that the state permit requirement was preempted, *inter alia,* by federal Forest Service regulations. The district court held that the state permit requirement was valid, denied Granite Rock's motion for summary judgment, and dismissed the action. The Ninth Circuit reversed, holding that the permit requirement was preempted by federal regulations. The Supreme Court held that Granite Rock did not need to seek a permit to raise a facial challenge based on federal preemption. The Court stated

that the California Coastal Commission, to successfully prevail against the preemption challenge, would be required only to identify "a possible set of permit conditions not pre-empted by federal law." 480 U.S. at 589, 107 S.Ct. at 1429. Reaching the merits of the preemption issue, the Court determined that the federal land-use laws were not intended to preempt all state environmental regulations and held that "the barren record of this facial challenge has not demonstrated any conflict [between federal Forest Service regulations and state environmental regulations]." *Id.* at 594, 107 S.Ct. at 1432.

We interpret *Granite Rock* to hold that for purposes of the federal standing requirement a party's failure to seek a permit may well serve to narrow the focus of the party's facial challenge to a permit requirement, but that the seeking of a permit is not a threshold standing requirement for challenging a permit regulation.

We, of course, deal in the instant case with a nonfederal claim, and the standing requirements for such a claim need not mirror the federal standing requirements. *Conrad v. City and County of Denver,* 656 P.2d 662, 669 (Colo. 1983).

(Colo.1985). A plaintiff may seek injunctive relief in concert with a declaratory judgment action under appropriate circumstances.

In *Johnson v. District Court of Seventeenth Judicial Dist.*, 195 Colo. 169, 576 P.2d 167 (1978), we upheld the issuance of a preliminary injunction against the enforcement of a county zoning regulation which required an oil-well servicing company to obtain a permit for each service operation conducted by the company. Because the facts in *Johnson* adequately demonstrated that the oil-well servicing company was threatened with imminent and significant injury unless enforcement of the permit regulation was restrained pending a final judgment on the merits, we concluded that the company was not required to "either discontinue its operations or submit to the permit regulation," nor was it required to challenge the permit regulation in a criminal proceeding and thereby risk a significant fine or penalty. 195 Colo. at 172, 576 P.2d at 169.

In the instant case, Bowen/Edwards met the threshold standing requirement for injunctive relief by showing that the performance standards and other requirements of the county regulations pose a present and significant threat to its legal interest in developing oil and gas resources in the unincorporated areas of La Plata County. As in *Johnson,* we see no reason to require the plaintiffs to violate the county regulations before according them standing to seek injunctive relief. We hasten to add, however, that in resolving the standing issue we are not resolving whether Bowen/Edwards is entitled to a permanent injunction against the enforcement of the county regulations. Such a decision depends in the first instance on a determination that the regulations are not preempted by state law—an issue we will presently address—and then on proof by a preponderance of the evidence that the regulations will cause Bowen/Edwards to suffer continuing irreparable injury. The district court's dismissal of Bowen/Edwards' complaint for lack of standing precluded any meaningful consideration of the propri-

ety of permanent injunctive relief under the circumstances present here.

### III.

We now turn to the issue of whether the court of appeals erred in concluding that the Oil and Gas Conservation Act, sections 34–60–101 to –126, 14 C.R.S. (1984 & 1991 Supp.), completely preempts local land-use regulation of oil and gas development activities. The purpose of the preemption doctrine is to establish a priority between potentially conflicting laws enacted by various levels of government. Before we can apply preemption analysis to La Plata County's land-use regulations, however, we must determine whether the regulations are within the scope of La Plata County's legislative authority.

### A.

In contrast to a home-rule municipality, which has certain inherent powers, "[a] county is not an independent governmental entity existing by reason of any inherent sovereign authority of its residents; rather, it is a political subdivision of the state, existing only for the convenient administration of the state government, created to carry out the will of the state." *Board of County Comm'rs of Dolores County v. Love*, 172 Colo. 121, 125, 470 P.2d 861, 862 (1970); *accord, e.g., Johnson v. Jefferson County Bd. of Health*, 662 P.2d 463, 471 (Colo.1983); *Pennobscot, Inc. v. Board of County Comm'rs of Pitkin County*, 642 P.2d 915, 918 (Colo.1982). As an agency of state government, a county possesses only the regulatory authority "expressly conferred upon [it] by the constitution and statutes, and such incidental implied powers as are reasonably necessary to carry out such express powers." *Board of County Comm'rs of Dolores County,* 172 Colo. at 125, 470 P.2d at 862. Although a county is prohibited by statute from adopting an ordinance that "is in conflict with any state statute," § 30–15–411, 12A C.R.S. (1986), an ordinance and a statute may both remain effective and enforceable as long as they do not contain express or implied conditions that are irreconcilably

in conflict with each other. *Ray v. City & County of Denver,* 109 Colo. 74, 77, 121 P.2d 886, 888 (1942); *C & M Sand & Gravel v. Board of County Comm'rs of Boulder County,* 673 P.2d 1013, 1017 (Colo.App. 1983).

In the Local Government Land Use Control Enabling Act, § 29–20–101 to –107, 12A C.R.S. (1986 & 1991 Supp.), the General Assembly has conferred broad authority on local governments to plan for and regulate the use of land within their respective jurisdictions. § 29–20–102, 12A C.R.S. (1986). A local government includes counties as well as cities and towns. § 29–20–103(1), 12A C.R.S. (1986). The statutory scheme vests counties with the power to regulate development and activities in hazardous areas, to protect land from activities that would cause immediate or foreseeable material damage to wildlife habitat, to preserve areas of historical and archaeological importance, to regulate the location of activities and development which may result in significant changes in population density, to provide for the phased development of services and facilities, to regulate land use on the basis of its impact on the community or surrounding areas, and to otherwise plan for and regulate land use so as to provide for the orderly use of land and the protection of the environment consistent with constitutional rights. § 29–20–104(1), 12A C.R.S. (1986).

Another source of county regulatory authority over land use is the County Planning Code, § 30–28–101 to –137, 12A C.R.S. (1986 & 1991 Supp.), which grants counties the power to "provide for the physical development of the unincorporated territory within the county and for the zoning of all or any part of such unincorporated territory." § 30–28–102, 12A C.R.S. (1986). "Unincorporated" is defined in the County Planning Code as that part of the county's territory that is "situated outside of cities and towns" or "not within the boundaries of any city or town." § 30–28–101(12), 12A C.R.S. (1986). County authority under this statutory scheme includes the power to "divide the territory of the county which lies outside of cities and towns into districts or zones of such number, shape, or area as it

may determine, and, within such districts or any of them, ... [to] regulate the ... uses of land." § 30–28–113(1), 12A C.R.S. (1986). County zoning regulations promulgated under the County Planning Code may include the classification of land uses and the distribution of land development and utilization. § 30–28–115(1), 12A C.R.S. (1986). A county also has the authority to adopt a zoning plan that regulates, among other things, "the uses of land for trade, industry, recreation, or other purposes." § 30–28–111(1), 12A C.R.S. (1986).

The expressly delegated authority conferred on counties by the Local Government Land Use Control Act and the County Planning Code leaves no doubt that land-use regulation is within the scope of a county's legislative power. The development of oil and gas resources and the operation of oil and gas facilities directly involve the use of land and undoubtedly have some impact on a county's interests in land-use control. While neither the Local Government Land Use Control Act nor the County Planning Code expressly prohibits county regulation of the land-use aspects of oil and gas developmental and operational activities within a county, the critical question nonetheless is whether the Oil and Gas Conservation Act renders La Plata County's Oil and Gas Regulations null and void under Colorado preemption doctrine.

### B.

There are three basic ways by which a state statute can preempt a county ordinance or regulation: first, the express language of the statute may indicate state preemption of all local authority over the subject matter; *see generally Brubaker v. Board of County Comm'rs of El Paso County,* 652 P.2d 1050, 1055 (Colo.1982); *City and County of Denver v. Tihen,* 77 Colo. 212, 221, 235 P. 777, 781 (1925), *overruled on other grounds by State Farm Mut. Ins. Co. v. Temple,* 176 Colo. 537, 542, 491 P.2d 1371, 1374 (1971); second, preemption may be inferred if the state statute impliedly evinces a legislative intent to completely occupy a given field by reason

of a dominant state interest, *see City of Golden v. Ford*, 141 Colo. 472, 476–79, 348 P.2d 951, 953–54 (1960); and third, a local law may be partially preempted where its operational effect would conflict with the application of the state statute, *see National Advertising Co. v. Department of Highways*, 751 P.2d 632, 637–38 (Colo.1988); *Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 183 Colo. 370, 374–77, 517 P.2d 834, 836–38 (1974). The resolution of this case depends on whether La Plata County's Oil and Gas Regulations have been rendered inoperative by any one of these three modes of state preemption.

1.

■■■ We first consider the question of express preemption. While the governmental interests involved in oil and gas development and in land-use control at times may overlap, the core interests in these legitimate governmental functions are quite distinct. The state's interest in oil and gas development is centered primarily on the efficient production and utilization of the natural resources in the state. A county's interest in land-use control, in contrast, is one of orderly development and use of land in a manner consistent with local demographic and environmental concerns. Given the rather distinct nature of these interests, we reasonably may expect that · any legislative intent to prohibit a county from exercising its land-use authority over those areas of the county in which oil development or operations are taking place or are contemplated would be clearly and unequivocally stated. We, however, find no such clear and unequivocal statement of legislative intent in the Oil and Gas Conservation Act.

Bowen/Edwards relies on section 34–60–105(1), 14 C.R.S. (1984), as evidence of a legislative intent to expressly preempt county land-use regulation over oil and gas developmental and operational activities. We find this argument devoid of merit.

Section 34–60–105(1) states in pertinent part that "[a]ny delegation of authority to any state officer, board, or commission to administer any other laws of this state relating to the conservation of oil or gas, or either of them, is hereby rescinded and withdrawn and such authority is unqualifiedly conferred upon the commission, as provided in this section." Section 34–60–105(1) does not include within its express terms *local* or *county* officers, boards, or commissions, nor does the statute directly address the question of local land-use authority over oil and gas developmental and operational activities within a county. Rather than expressive of a legislative intent to preempt local regulation of land use related to oil and gas development and operations within a county, we read the statute as merely an effort to clarify that the only *state* administrative body with regulatory authority over oil and gas activities is the Oil and Gas Conservation Commission.

The legislative history surrounding the enactment of section 34–60–105(1) supports our modest rendition of the statute. In 1947 the General Assembly enacted a statute authorizing the Commissioner of Mines to conduct annual safety inspections of oil and gas wells and to promulgate rules and regulations necessary to carry out that function. Ch. 239, sec. 1, 1947 Colo.Sess. Laws 674–77 (later codified at § 34–62–101 and –110, 14 C.R.S. (1984)). Section 34–60–105(1), which was enacted in 1951 as part of the Oil and Gas Conservation Act, ch. 230, sec. 7, 1951 Colo.Sess.Laws 651, 655, was obviously intended to place the authority for administering laws relating to the "consumption of oil and gas" "unqualifiedly" and exclusively in the Oil and Gas Conservation Commission. This statutory transfer of authority had the effect of negating the previously enacted authority of the Commissioner of Mines over oil and gas operations.[6]

---

**6.** Any possible doubt about the purpose of section 34–60–105(1) was dispelled in 1985 when the General Assembly, as part of an amendment to the Oil and Gas Conservation Act authorizing the Oil and Gas Conservation Commission to promulgate safety regulations for oil and gas facilities, expressly repealed sections 34–62–101 to –110, 14 C.R.S. (1984), which dealt with the inspection and rulemaking authority of the Commissioner of Mines over oil and gas wells.

Moreover, our interpretation of section 34–60–105(1) finds support in the stated purposes of the Oil and Gas Conservation Act, which include the prevention of waste and the efficient and fair development and production of oil and gas resources. A unitary source of regulatory authority at the state level of government over the technical aspects of oil and gas development and production serves to prevent waste and to protect the correlative rights of common-source owners and producers to a fair share of production profits. To read into the statute anything more than a legislative effort to consolidate regulatory authority that otherwise might be shared by different *state* agencies into one and only one administrative body—namely, the Oil and Gas Conservation Commission—would rest on nothing but speculation. We thus conclude that the Oil and Gas Conservation Act does not expressly preempt any and all aspects of a county's land-use authority over those areas of a county in which oil and gas activities are occurring or are planned.

2.

Our next inquiry is whether the Oil and Gas Conservation Act impliedly demonstrates a legislative intent to occupy all aspects of oil and gas development and operations, including land-use control over those activities, by reason of a dominant state interest in oil and gas development and operations. A legislative intent to preempt local control over certain activities cannot be inferred merely from the enactment of a state statute addressing certain aspects of those activities. *City of Aurora v. Martin*, 181 Colo. 72, 76, 507 P.2d 868, 869 (1973). On the contrary, the determination of whether a legislative intent to completely occupy a field to the exclusion of all other regulation must be measured not only by "the language used but by the whole purpose and scope of the legislative scheme," including the particular circumstances upon which the statute was intended to operate. *City of Golden*, 141 Colo. at 478, 348 P.2d at 954.

There is no question that the efficient and equitable development and production of oil and gas resources within the state requires uniform regulation of the technical aspects of drilling, pumping, plugging, waste prevention, safety precautions, and environmental restoration. Oil and gas production is closely tied to well location, with the result that the need for uniform regulation extends also to the location and spacing of wells. *See Voss v. Lundvall Brothers*, 830 P.2d 1061, 1067–1068 (Colo. 1992). The state's interest in uniform regulation of these and similar matters, however, does not militate in favor of an implied legislative intent to preempt all aspects of a county's statutory authority to regulate land use within its jurisdiction merely because the land is an actual or potential source of oil and gas development and operations. The state's interest in oil and gas activities is not so patently dominant over a county's interest in land-use control, nor are the respective interests of both the state and the county so irreconcilably in conflict, as to eliminate by necessary implication any prospect for a harmonious application of both regulatory schemes. *See Colorado State Bd. of Land Comm'rs v. Colorado Mined Land Reclamation Bd.*, 809 P.2d 974, 982–85 (Colo. 1991) (under Local Government Land Use Control Enabling Act and County Planning Code, counties retained zoning authority over school lands, which were leased by State Land Board for mining operations for which Mined Land Reclamation Board issued limited-impact mining permit, where several statutory schemes bearing on respective areas of state and county authority did not clearly express legislative intent to override county authority).

The court of appeals nonetheless interpreted the following two provisions of the Oil and Gas Conservation Act as manifesting a legislative intent to impliedly regulate all phases of oil and gas activity, including the impact of oil and gas activity on the surrounding local community: section 34–60–106(11), 14 C.R.S. (1991 Supp.), which authorizes the Oil and Gas Conservation Commission to promulgate rules and regulations to protect the health, safety, and

welfare of the general public in the drilling, completion, and operation of oil and gas wells and production facilities; and section 34–60–106(4), 14 C.R.S. (1984), which provides that the grant of any specific power or authority to the Oil and Gas Conservation Commission shall not be construed to be in derogation of any general powers and authority granted to the commission by the Oil and Gas Conservation Act. *Bowen/Edwards*, 812 P.2d at 658–59. In our view, these provisions, read either singly or together, fail to establish an implied total preemption of a county's authority to enact land-use regulations for oil and gas developmental and operational activities within the county.

It is a long-standing principle of statutory construction that a statute be interpreted in a manner that gives effect to legislative intent or purpose. *Colorado State Bd. of Land Comm'rs*, 809 P.2d at 983; *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990); *Griffin v. S.W. Devanney & Co., Inc.*, 775 P.2d 555, 559 (Colo.1989). The predominant legislative concern in enacting section 34–60–106(11) was to grant the Oil and Gas Conservation Commission adequate rulemaking authority in order to protect the general public from accidents caused by gas leaks and "blowouts" or explosions that might accidentally result from the pumping of oil and gas from subterranean depths. *See* Transcript of Preliminary Discussion of Senate Committee on Agriculture, Natural Resources and Energy, January 10, 1985, pp. 14, 21. The effect of section 34–60–106(11), therefore, is to vest the commission with the authority and responsibility for developing adequate technical safeguards calculated to minimize the risk of injury to the public from oil and gas drilling and production operations. In a very broad sense section 34–60–106(11) furthers one of the primary legislative purposes of the Oil and Gas Conservation Act—*i.e.,* to permit each oil and gas pool to achieve an efficient rate of production subject to the prohibition of waste—and nothing in the statutory text of section 34–60–106(11), or for that matter, in the legislative history underlying the enactment of that section,

evinces a legislative intent to preempt all aspects of a county's land-use authority over land that might be subject to oil and gas development or operations.

Furthermore, we find no basis in section 34–60–106(4) for a contrary conclusion. That section, on which the court of appeals also relied, merely states that the grant of any specific power or authority to the Oil and Gas Conservation Commission must not be construed in derogation of any of the commission's general powers and authority. In short, we find nothing in the statutory text of either section 34–60–106(11) or section 34–60–106(4) to support the total preemption of a county's authority to enact land-use regulations applicable to oil and gas development and operational activities within the county.

3.

■ We last consider whether La Plata County's oil and gas regulations have been partially preempted because the operational effect of the county regulations conflicts with the application of the state statute or state regulations. State preemption by reason of operational conflict can arise where the effectuation of a local interest would materially impede or destroy the state interest. *National Advertising*, 751 P.2d at 636. Under such circumstances, local regulations may be partially or totally preempted to the extent that they conflict with the achievement of the state interest. *Id.*

On the basis of the limited record before us, we are unable to determine whether an operational conflict exists between La Plata County's Oil and Gas Regulations and the Oil and Gas Conservation Act. The purpose of the county regulations is to "facilitate the development of oil and gas resources within the unincorporated area of La Plata County while mitigating potential land-use conflicts between such development and existing, as well as planned, land uses." County Regulations, § 6.103. This statement of purpose evinces an obvious intent to regulate in a manner that does not hinder the achievement of the state's interest in fostering the efficient

development, production, and utilization of oil and gas resources in the state. *See* section 34–60–102(1), 14 C.R.S. (1984). The county regulations thus appear to be designed to harmonize oil and gas developmental and operational activities with the county's overall plan for land-use and with the state's interest in those developmental and operational activities.[7]

We hasten to add that there may be instances where the county's regulatory scheme conflicts in operation with the state statutory or regulatory scheme. For example, the operational effect of the county regulations might be to impose technical conditions on the drilling or pumping of wells under circumstances where no such conditions are imposed under the state statutory or regulatory scheme, or to impose safety regulations or land restoration requirements contrary to those required by state law or regulation. To the extent that such operational conflicts might exist, the county regulations must yield to the state interest. Any determination that there exists an operational conflict between the county regulations and the state statute or regulatory scheme, however, must be resolved on an ad-hoc basis under a fully developed evidentiary record. Due to the trial court's dismissal of the complaint on the pleadings, such a record is not before us in this case.

Upon remand of the case to the district court, Bowen/Edwards should be afforded the opportunity to specify by appropriate pleading those particular county regulations which it claims are operationally in conflict with, and thus preempted by, the state statutory or regulatory scheme applicable to oil and gas development and operations within La Plata County. If La Plata County denies Bowen/Edwards' preemption claim with respect to any of the challenged regulations, the district court should permit both Bowen/Edwards and the county to develop an adequate evidentiary record on the preemption issue, and at the conclusion of the evidence the court should enter appropriate findings of fact and conclusions of law.

IV.

We affirm that part of the judgment holding that Bowen/Edwards has standing to challenge La Plata County's Oil and Gas Regulations, and we reverse that part of the judgment holding that the Oil and Gas Conservation Act totally preempts the county's land-use authority over all aspects of oil and gas development and operations in unincorporated areas of the county. We remand the case to the court of appeals with directions to return the case to the

7. Bowen/Edwards relies on *Oborne v. Board of County Comm'rs of Douglas County,* 764 P.2d 397, 401–02 (Colo.App.1988), for the proposition that any local regulation of oil and gas activities is irreconcilable with the Oil and Gas Conservation Act. We do not read the court of appeals' opinion in *Oborne* so broadly. In *Oborne,* Douglas County adopted a zoning resolution which required oil and gas operators, as a condition for a permit to drill an exploratory well, to protect neighboring water supplies, reduce fire dangers, and provide a bond to assure adequate plugging of the wells and reclamation of the well site. Because the oil and gas operators refused to meet the conditions and safeguards imposed by the county, the Board of County Commissioners denied the application for a special use permit. In affirming the district court's reversal of the board's decision, the court of appeals held, based on a fully developed evidentiary record, that the county conditions imposed on the permit application of the oil and gas operators would conflict with the provisions of the Oil and Gas Conservation Act and with regulations adopted thereunder which related to the same subject matter addressed by the county conditions. In the course of its opinion, the court of appeals assumed that Douglas County had authority under the County Planning Code and the Local Governmental Land Use Control Enabling Act to impose requirements on the operation of oil and gas wells within the county, 764 P.2d at 400, but concluded that such regulations address the very same subjects that were in the statutory rulemaking authority of the Oil and Gas Conservation Commission. Rather than standing for the broad proposition that the Oil and Gas Conservation Act completely preempts all county regulation of oil and gas developmental and operational activities within the county, we read the *Oborne* decision as turning on a narrow operational conflict between the conditions imposed by the county on the technical aspects of oil and gas operations within the county and the regulatory authority vested in the Oil and Gas Conservation Commission over the very same technical matters.

district court for further proceedings consistent with the views herein expressed.