No. 20,325.

Maxine G. Skinner, et al., *v.* The Industrial
Commission of Colorado, et al.
(381 P. [2d] 253)

Decided April 8, 1963.    Rehearing denied May 20, 1963.

Messrs. Johnson and Cain, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank
E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for
defendant in error Industrial Commission of Colorado.

Mr. Harold Clark Thompson, Mr. Louis Schiff, Mr.

ALIOUS ROCKETT, Mr. FRED B. DUDLEY, Mr. FRANCIS L. BURY, for defendants in error State Compensation Insurance Fund, Insurer, and Harry R. Blair, doing business as Blair Dry Wall, Employer.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS writ of error is directed to a judgment of the district court affirming denial of compensation to the plaintiffs in error. Plaintiffs in error will be referred to herein as claimants, the Industrial Commission as the commission, the State Compensation Insurance Fund as the fund and Blair Dry Wall Co. as the employer.

The record discloses that Almos Skinner was employed by the employer as a dry wall finisher. On July 11, 1960, he was sent to work at "Paradise Hills," a housing development located in the Lookout Mountain area west of Denver. The elevation of this area is approximately 7500 feet above sea level. The deceased arrived there some time in the morning and immediately began working at a job described as "texturing." This was not his normal work and testimony indicated it was more strenuous than his usual work. He remained at the "Paradise Hills" location until around 2:30 P.M. when he left to return to his usual work location at Alameda and Simms Street in Jefferson County, West of Denver. He left "Paradise Hills," driving his own pickup truck but failed to show up at the Alameda location. When he had not arrived at home by evening the members of his family began a search. They found his body and his truck in a ravine off a highway which was the ordinary route to follow to his second assignment. The body was in the pickup truck, head downward on the floor board, with blood stains in the mouth as well as near the body and on the truck.

Following these events claimants filed their claim for

workmen's compensation. Liability was first admitted on the basis that the cause of death was an "auto accident." Within a month, however, the fund received the coroner's death certificate giving as the cause of death a coronary occlusion with the condition of livor mortis. Notice of contest was immediately filed and a hearing followed.

At the hearing the first witness called was Robert D. Perkins, one of two State Patrol Officers who had investigated the accident. He testified that there were no skid marks on the road and it appeared that the car went off the highway and rolled down the ravine. Hearsay evidence, admitted over objection, elicited from him was to the effect that the deceased's brother told him that deceased had recently complained of pains in his chest and had been sent home from work because he had been having fainting spells. The employer, however, testified that the deceased had no health problems to his knowledge and was never sent home from work. Testimony was also taken from a co-worker of the deceased on the date in question. He stated that it had been a hot day and the deceased had made a comment about this, but none about his health. Bill Skinner, deceased's brother, testified the deceased had never complained to him about his health and he was unaware of any previous heart condition.

A copy of the autopsy and the death certificate were admitted in evidence; both stating that death was caused by a coronary occlusion.

Dr. Carrol Shinn, a general practitioner, who cared for the deceased before his death, stated that he had examined him completely in the previous year and had seen him, the last time, one month before his death. There was no evidence of a heart condition at that time. The doctor further testified that if a heart condition were developing then overexertion or emotional upset could have brought on a fatal heart attack.

The deputy coroner, Dr. John R. Hunt, testified as to

the autopsy performed. He had found the cause of death to be a coronary occlusion. The doctor had no knowledge of the physical activity of the deceased on the date of his death but admitted that overexertion could have been a contributing factor in the death.

Two physicians who specialized in heart diseases testified as to the possible connection of overexertion to the coronary attack that caused the death. The doctors were called and asked two hypothetical questions. These questions presented the situation that had occurred and then each was asked the question as to whether the higher altitude, the heat of the particular day and overexertion could have been the direct cause of the fatal heart attack. One of these, Dr. George H. Kurfman, Jr., testified that none of the factors in question, individually or all combined, would bring on a coronary occlusion causing death. He further stated that the exact cause of this particular form of heart attack was not clearly known and unless the conditions were exceptional it was difficult to say what would precipitate such an attack. On cross examination Dr. Kurfman admitted that in order for him to be certain of the cause of death in this case would have required an examination by him of the brain at the time of the autopsy as it was possible that something could have happened in the brain which had something to do with the death.

Dr. Gerald S. Gordon was then called by the claimant. In answer to the hypothetical question he stated that he believed the death was caused by a coronary occlusion and probably a myocardial infarction. He further stated that a higher altitude, on a hot day, with overexertion could precipitate a heart attack of this type; that if the deceased had been his patient he would have recommended immediate bed rest as the symptoms were no doubt in evidence several days before the actual fatal attack. Dr. Gordon stated, on cross examination, that the altitude or heat as individual factors would not be

too important, and it was more the fact of any activity during this period which would be the danger.

At the conclusion of the evidence the referee entered judgment for the fund and made the following finding:

"Respondents contend very successfully through competent medical evidence that the decedent suffered a vascular disease; that he was under treatment for a cardiac condition; that the work done on July 11, 1960 was not such as to constitute overexertion and that the altitude was not such as to be a contributing factor, and that the heat played no part in decedent's death."

Following the referee's award claimant petitioned the commission for reversal and failing there sought review in the district court where the award was affirmed. This writ of error followed.

Claimants urge several grounds for reversal. They can be summarized as follows:

1. That there is a lack of evidence to support the findings of the referee; and

2. That claimants established as a matter of law that the cause of death was a coronary occlusion brought on by overexertion.

The findings that the claimants specify as not being supported by the evidence are that there was no showing that the claimant had a previous heart condition or was under treatment for it, or that death occurred before the truck left the highway.

As to the findings of an alleged previous heart condition and alleged prior treatment there is certainly no direct support in this record and the various defendants in error so admit on this writ of error. As to the other matters no error can flow from such conclusions. Here it was undisputed that the death was caused solely by a coronary occlusion and even if the commission's reasoning were erroneous it would merely have arrived at the right result for the wrong reason. We have held that a judgment will not be reversed under such circum-

stances. *Wilkowski v. Industrial Com.*, 113 Colo. 46, 154 P. (2d) 615 (1944).

■ As we have so often stated, the commission is the fact finding body and when there is evidence to support its conclusion we will not disturb it on review. *Industrial Commission of Colorado v. Klaczkowski,* 146 Colo. 11, 360 P. (2d) 104 (1961).

■ Finally, claimants state that this case comes within the scope of *Industrial Com. v. Havens,* 136 Colo. 111, 314 P. (2d) 698 (1957), and meets the requirements of overexertion being the cause of the coronary occlusion as a matter of law. In this connection we point out that in *Havens* it was held that once a claimant has established a prima facie case, the respondent must produce competent evidence of nonemployment causation in rebuttal or the claimant will prevail. Here the fund presented competent evidence to sustain its position which the commission accepted. Of course there are other differences, too, between the two cases, such as here only overexertion is claimed whereas in *Havens* there was both a blow and overexertion.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANTZ and MR. JUSTICE HALL concur.