Laura TAYLOR, Petitioner–Appellant,

v.

STATE PERSONNEL BOARD, Appellee,

and

Colorado Department of Public Health and Environment, Respondent–Appellee.

No. 09CA0744.

Colorado Court of Appeals, Div. II.

Feb. 18, 2010.

Antonio Bates Bernard, P.C., Howard M. Haenel, Denver, Colorado, for Petitioner–Appellant.

John W. Suthers, Attorney General, Roxane Baca, Senior Assistant Attorney General, Denver, Colorado, for Appellee.

John W. Suthers, Attorney General, Vincent E. Morscher, First Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

Opinion by Judge GABRIEL.

Petitioner, Laura Taylor, appeals the State Personnel Board's (Board's) decision affirming the administrative law judge's (ALJ's) order dismissing her claim for a declaratory judgment. Taylor sought a declaration determining that because she had been an employee within the meaning of article XII, section 13(2) of the Colorado Constitution from 1985 through December 14, 1998, the Colorado Department of Public Health and Environment (CDPHE) was constitutionally required to certify her as a classified employee within the state personnel system commencing in 1985. We affirm the Board's determination that, as a matter of law, Taylor was not entitled to such a declaration, although our reasoning differs from that of the Board.

## I. Background

In her petition for declaratory order, Taylor alleged the following facts, which we assume to be true for purposes of determining whether the Board erred in dismissing Taylor's claims for failure to state a claim on which relief can be granted:

Taylor has performed the job of newborn screening follow-up coordinator for CDPHE and its predecessor agencies since 1985. The nature of Taylor's employment relationship with CDPHE, however, has changed over time.

Initially, from 1985 through September 1989, Taylor worked directly for CDPHE as a part-time independent contractor on a contract-for-service basis. CDPHE did not withhold taxes or pay or provide any benefits to Taylor during this time.

Then, in September 1989, CDPHE determined that it needed to staff the newborn screening follow-up coordinator position on a full-time basis. There was, however, no full-time equivalent (FTE) budgeted for that position. Accordingly, CDPHE told Taylor that she would be employed by a third party, Human Services, Inc. (HSI), but would devote full time to performing the same job that she had previously been doing. This arrangement continued, and Taylor continued to perform the function of newborn screening follow-up coordinator, albeit as an employee of HSI, until December 14, 1998.

During this nine-year period, CDPHE personnel repeatedly told Taylor that CDPHE wanted to make her a classified state employee but lacked the FTE to do so. Throughout this period, however, Taylor had a state office at CDPHE, a state telephone number, a state e-mail address (once e-mail was in use), and state-issued business cards. She had the same access to the CDPHE premises as other CDPHE employees. She was supervised and her work was entirely controlled by a superior state employee. HSI had no control over her daily employment, and she had no routine contact with HSI. And she functioned on a statewide and national basis as a representative of the Medical Affairs and Special Programs Section and the newborn screening follow-up program.

On December 15, 1998, Taylor was brought into the state personnel system as a probationary employee. She was later made a certified employee of the state.

Approximately eight years later, Taylor asked CDPHE to correct its allegedly improper characterization of her position during the period from 1985 through December 14, 1998. Specifically, she asked CDPHE to fund her PERA account so that it would reflect how it would have been funded had Taylor been treated as an employee instead of as an independent contractor. CDPHE denied Taylor's request, and Taylor filed a petition for declaratory order with the Board. In this petition, as pertinent here, Taylor requested an order declaring that she had been acting as a common law employee of the state and, thus, should have been a classified state employee commencing sometime in 1985. In addition, Taylor sought a declaration that she was entitled to PERA service credits for her entire tenure as an employee of the state, without regard to the manner in which CDPHE and the state characterized their relationship with her. The Board remanded the matter to an ALJ for hearing.

Subsequently, the ALJ determined that the Board lacked jurisdiction to provide the declaratory relief regarding Taylor's entitlement to PERA service credits that she sought. The ALJ concluded, however, that the Board was the appropriate agency to address the other issues raised in the petition.

Thereafter, the ALJ considered and granted CDPHE's motion to dismiss Taylor's remaining claims for failure to state a claim on which relief may be granted. In so ruling, the ALJ determined that common law definitions of employment do not apply to the state personnel system. To the contrary, the ALJ stated that neither the General Assembly nor the Board had expanded the scope of employment for the state "beyond the three types enumerated in the CSA [Civil Service Amendment, Colo. Const. art. XII, §§ 13–15]: classified, exempt, and temporary."

Taylor appealed the ALJ's decision to the Board. In her appeal, Taylor argued that the ALJ had misapprehended the remedies that she was seeking. In particular, Taylor contended that the ALJ had erroneously concluded that she sought retroactive certification as a classified state employee based on common law doctrines of employment relationships. Taylor readily conceded that the Board was not authorized to grant such a remedy. Taylor asserted, however, that when a state agency violates the constitutional and statutory requirements of the state personnel system and when these violations adversely affect an employee, some remedy is appropriate, even if the remedy is not retroactive certification. Taylor then argued

that the declaration that she was seeking was an appropriate remedy in these circumstances.

On February 25, 2009, the Board denied Taylor's petition for a declaratory order and adopted as its own the ALJ's order granting CDPHE's motion to dismiss.

Taylor now appeals.

## II. Standard of Review

Our review of the Board's action is pursuant to section 24–4–106(11), C.R.S.2009, which incorporates by reference the standard of review set forth in section 24–4–106(7), C.R.S.2009. That section, in turn, provides:

> If the court finds no error, it shall affirm the agency action. If it finds that the agency action is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law, then the court shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, compel any agency action to be taken which has been unlawfully withheld or unduly delayed, remand the case for further proceedings, and afford such other relief as may be appropriate. In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party. In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established.

*Id.*

## III. Discussion

Although the record reveals some confusion as to the precise relief that Taylor is seeking, we understand, and Taylor's counsel confirmed at oral argument, that Taylor is contending that it was improper for CDPHE to have retained her through independent contracts and that she should have been certified as a classified employee within the meaning of the CSA. Although Taylor acknowledges that the Board was not empowered to certify her retroactively, she asserts that she is entitled to some sort of remedy for CDPHE's allegedly improper conduct. Taylor contends that the appropriate remedy is a declaration that she *should have been* certified as a classified employee, as opposed to having been retained as an independent contractor, sometime in 1985. At oral argument, Taylor's counsel clarified that, by "certified," Taylor means that her position should have been created within the state personnel system, and Taylor should have been permitted to compete for that position. Taylor asserts that such "certification" was required in 1985 because she was a permanent employee within the meaning of Colorado Constitution article XII, section 13(2). As a matter of apparent first impression, we conclude that the remedy that Taylor seeks is not available, as a matter of law, in Colorado.

The CSA was originally adopted by the people in 1918, in response to legislative hostility toward a merit-based civil service. *Colorado Ass'n of Public Employees v. Dep't of Highways*, 809 P.2d 988, 991 (Colo.1991). "The voters sought to safeguard the merit system by incorporating it into the state constitution." *Id.* The CSA is further developed statutorily by sections 24–50–101 to – 142, C.R.S.2009, of the State Personnel System Act (Act). *Id.*

The basic purpose of the civil service laws is to secure efficient public servants for positions in government. *Id.* Toward this end, the CSA provides for appointment and promotion "according to merit and fitness, to be ascertained by competitive tests of competence." Colo. Const. art. XII, § 13(1). These tests determine selection eligibility, and "[t]he person to be appointed to any position under the personnel system shall be one of the three persons ranking highest on the eligible list for such position, or such lesser number as qualify, as determined from

[such] competitive tests." *Id.* at § 13(5). Moreover, a probationary period is required for all persons initially appointed to a state position. *Id.* at § 13(10). After satisfactory completion of this probationary period, the person initially appointed shall be certified to that position within the personnel system. *Id.* Unsatisfactory performance, however, shall be grounds for dismissal during such period without the right of appeal. *Id.*

In dismissing Taylor's petition, the ALJ and the Board seized on that portion of the petition seeking a declaration that Taylor should have been certified as a classified employee within the state personnel system. Applying the principles discussed above, the ALJ and the Board concluded, among other things, that Taylor could not have been certified as a classified employee because she had not satisfied the various criteria set forth in the CSA and the Act. The ALJ and the Board thus determined that Taylor was not entitled to the remedy she was seeking.

Given the wording of Taylor's petition, and particularly her request for a declaration that she should have been certified as a classified employee in the state personnel system, we fully understand why the ALJ and the Board interpreted Taylor's claim as they did. Nonetheless, we understand Taylor's claim to be somewhat different. Specifically, and particularly given counsel's clarifications at oral argument, we understand Taylor to be claiming that CDPHE's conduct in retaining her through independent contracts, as opposed to through the processes of the merit-based state personnel system, was wrongful. As a remedy for this wrongful conduct, Taylor is requesting a declaration, not that she was a classified employee, but that she *should have been* certified as a classified employee in 1985 (i.e., that her position should have been established in the state personnel system and that she should have been permitted to compete for that position).

The question thus becomes whether the Board correctly determined, as a matter of law, that Taylor was not entitled to the remedy that she is seeking, thereby warranting dismissal of her claims. For several reasons, we conclude that the Board reached the correct result, although our reasoning differs from that of the Board. *See Skinner v. Industrial Commission,* 152 Colo. 97, 101, 381 P.2d 253, 255 (1963) (even if Industrial Commission's reasoning was erroneous, appellate court will not reverse if the Commission arrived at the right result); *Koch Indus., Inc. v. Pena,* 910 P.2d 77, 80 (Colo.App. 1995) (the Industrial Claims Appeals Office could affirm the ALJ's decision when the ALJ reached the correct result, albeit for an incorrect reason); *see also Hensley v. Missouri Div. of Child Support Enforcement,* 905 S.W.2d 889, 891 (Mo.Ct.App.1995) (when an agency decision is appealed based on a legal question, the reviewing court can sustain the agency's decision if it is correct, even though the grounds on which the reviewing court relies are not the same as those on which the agency relied).

### A. Existing Law Does Not Support the Remedy that Taylor Seeks

First, assuming without deciding that Taylor is correct in contending that it was improper for CDPHE to retain her by way of independent contracts, rather than through state personnel system processes, *see, e.g., Melle v. Dep't of Administration,* No. 94B067, at 1 (State Personnel Bd., Final Order, Apr. 1995) (*Melle II* ) (concluding that it was improper for Department of Administration to retain employee through a series of temporary appointments and contracts, rather than through the merit-based competitive system established by the CSA), *aff'd,* (Colo. App. No. 95CA0966, Oct. 31, 1996) (not published pursuant to C.A.R. 35(f)), she cites no applicable authority supporting the remedy that she now seeks for this allegedly improper conduct. Indeed, existing authority suggests that such a remedy is not proper in these circumstances.

Specifically, in *Farmers Insurance Exchange v. District Court,* 862 P.2d 944 (Colo. 1993), our supreme court stated:

A declaratory judgment action is only appropriate when the rights asserted by the plaintiff are present and cognizable ones. "It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts."

If entered, a declaratory judgment would effect a change in the plaintiff's present rights or status. "It is not the function of the courts, even by way of declaration, to adjudicate . . . in the absence of a showing that a judgment, if entered, would afford the plaintiff present relief."

. . . "[T]he plaintiff [must] demonstrate that there is an existing legal controversy[,] . . . not a mere possibility of a future legal dispute over some issue." The court "should refuse to answer speculative inquiries."

*Id.* at 947–48 (citations omitted) (quoting, in order, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Taylor v. Tinsley*, 138 Colo. 182, 183, 330 P.2d 954, 955 (1958); *Bd. of County Comm'rs v. Bowen /Edwards Assocs.*, 830 P.2d 1045, 1053 (Colo.1992); and *Mulcahy v. Johnson*, 80 Colo. 499, 512, 252 P. 816, 821 (1927)).

■ Here, the remedy that Taylor seeks would not effect a change in her present rights or status. Indeed, it would do nothing more than state a legal conclusion regarding what should have occurred some twenty-five years ago. Nor would such a declaration afford Taylor any present relief or resolve any current controversy between the parties. *See Berenergy Corp. v. Zab, Inc.*, 94 P.3d 1232, 1235 (Colo.App.2004) (noting that a court may refuse to render a declaratory judgment when it would not terminate the uncertainty or controversy giving rise to the proceeding, and stating that a court should not render a declaratory judgment unless it will fully and finally resolve the uncertainty or controversy as to all parties with a substantial interest who could be affected by the judgment), *aff'd*, 136 P.3d 252 (Colo.2006). As Taylor readily concedes, the declaration that she seeks would simply serve as a precursor for a potential future claim for PERA benefits. Moreover, the likelihood of Taylor's prevailing on such a future claim is, at this point, speculative at best.

At oral argument, in response to the division's questions concerning authority supporting the remedy that she is seeking, Taylor's counsel stated that *Colorado State Civil Service Employees Association v. Love*, 167 Colo. 436, 448 P.2d 624 (1968); *Salas v. State Personnel Board*, 775 P.2d 57 (Colo.App. 1988); and the Board's decision in *Melle II* best support her position. None of these authorities, however, provides for the type of declaratory judgment that Taylor is seeking here. Moreover, each of these cases is distinguishable.

In *Love*, 167 Colo. at 444–55, 448 P.2d at 627–32, for example, our supreme court addressed the constitutionality of certain provisions of the Administrative Reorganization Act of 1968 and held that provisions of that Act excluding certain state officials from the civil service violated the CSA. The court did not address remedies applicable in circumstances like those alleged by Taylor. *Id.*

Similarly, in *Salas*, 775 P.2d at 59, the Board denied the appeal of a discharged university employee on the ground that the employee had no right to appeal because he was exempt from the classified personnel system. A division of this court reversed, concluding that, before there could be a determination that the employee was exempt, he was entitled to notice and an opportunity to be heard. *Id.* Here, there is no dispute that Taylor received a hearing on her claims. Moreover, *Salas* in no way addresses the type of remedy that Taylor seeks here.

Finally, in *Melle II*, at 1, a state agency obtained Melle's services through a series of temporary appointments and contracts. Melle spoke with the Department of Administration Personnel Director about the potential for his becoming a permanent employee, filled out four applications for permanent employment, and requested an exemption from a then existing hiring freeze, which prevented him from becoming a permanent employee. *Melle v. Dep't of Administration*, No. 94B067, at 9 (State Personnel Bd., Initial Decision of ALJ, Nov. 1994) (*Melle · I*). Thereafter, Melle filed a letter of appeal with the State Personnel Board requesting permanent status. *Id.* Approximately one week later, however, his contract was cancelled. *Id.* at 10.

Melle then appealed the termination of his employment, and the Board ultimately concluded that the state agency's conduct in

stringing together a series of temporary appointments and contracts violated the state constitution. *Melle II*, at 1. The question thus became one of the remedy, if any, to which Melle was entitled. The Board concluded that Melle was not entitled to the retroactive certification that he sought. *Id.* at 2. This did not mean, however, that he was left with no remedy. Because his contract had been terminated before it had expired, the Board concluded that it could make Melle whole by requiring the agency to pay Melle the payments that he reasonably could have expected at the time his contract was terminated. *Id.* Thus, if anything, the Board in *Melle II* rejected the type of declaratory relief that Taylor is seeking here, awarding instead contract damages to make Melle whole.

Nor are we persuaded by Taylor's contention, made in a conclusory fashion and without argument or citation to any authority, that she requires the declaration as a condition to pursuing benefits from PERA, which, Taylor claims, establishes the requisite controversy to be determined. The lack of any argument and supporting authority alone would suffice to allow us to reject Taylor's assertion. *See Erskine v. Beim*, 197 P.3d 225, 232 (Colo.App.2008) (declining to address the defendants' contention of error in striking an expert, where the defendants made no argument and cited no authority as to why the trial court's ruling was an abuse of discretion).

Moreover, our reading of the applicable PERA statutes suggests that Taylor's contention is unfounded. Under section 24–51–205(1), C.R.S.2009, the PERA board is authorized to determine, among other things, membership status, eligibility for benefits, and issues relating to service credits. *See also Public Employees' Retirement Ass'n v. Stermole*, 874 P.2d 444, 446 (Colo.App.1993) (noting that under the PERA statutory scheme, the PERA board has the authority to determine factually what is and is not salary and whether the entity making payments to an individual is an "employer" for the purpose of determining benefits).

The PERA statutes provide guidance to assist the board in making such determinations. For example, section 24–51–101(29), C.R.S.2009, defines "member" as "any employee of an employer defined [to include the State of Colorado] who works in a position which is subject to membership in the association and for whom contributions are made." Section 24–51–301, C.R.S.2009, provides, "All employees who hold positions subject to membership and whose salaries are paid by an employer shall become members as a condition of employment, except as specified in [the relevant article of the Colorado Revised Statutes]." And section 24–51–310, C.R.S.2009, lists categories of persons not eligible for membership in PERA.

Taken together, these provisions suggest to us that the issue of whether Taylor was an employee for purposes of receiving PERA service credits, which is the remedy that Taylor ultimately seeks, is indeed within PERA's jurisdiction. This conclusion is fully consistent with the position that PERA took before the ALJ here, in which PERA stated that any decision issued by the Board may not be binding on it. Nor do we perceive as inconsistent the ALJ's determination that the Board had exclusive jurisdiction regarding the non-PERA related relief that Taylor was seeking. As noted above, Taylor sought a declaration that she was acting as a common law employee of the state *and, thus, should have been certified as a classified employee within the state personnel system.* The parties here do not appear to dispute that the Board has exclusive jurisdiction over matters relating to the state personnel system. Taylor cites no authority, however, and we are aware of none, that provides that the Board may make decisions that bind the PERA board with respect to a determination as to who is entitled to PERA benefits or service credits.

For these reasons, in our view, the remedy that Taylor seeks would amount to nothing more than an advisory opinion. Neither the Board nor this court, however, may render such an opinion. *See Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n*, 758 P.2d 164, 168 (Colo.1988) (declaratory judgment is not available simply for advisory purposes when no real controversy exists).

### B. Taylor Received the Benefit of her Bargain

■ Second, the declaration that Taylor now seeks would require us to ignore the fact that she received the full benefit of her contractual bargain for the entire time that she worked under a contract. As noted above, from 1985 until 1989, when Taylor worked directly for CDPHE as a part-time independent contractor, CDPHE paid her on a contract-for-service basis and did not withhold taxes or provide any benefits. Then, from 1989 until 1998, Taylor was an employee of and was paid by HSI. Taylor cites no evidence to suggest that CDPHE withheld taxes or provided any other benefits to her in this period, and we have not seen such evidence in the record.

In this respect, this case is distinguishable from the State Personnel Board's decision in *Melle II,* on which both sides rely. As noted above, in *Melle,* the Board was able to fashion a remedy because Melle had not received the benefit of his contractual bargain. Here, in contrast, it is not disputed that Taylor received the full benefit of her bargain. Thus, no similar remedy is warranted or appropriate.

### C. The Remedy that Taylor Seeks Requires Speculative Inquiries

■ Third, even if Taylor were entitled to some sort of declaration as a remedy, we perceive no basis in law for a declaration that she should have been certified when she was first retained. Rather, given the constitutional and statutory requirements of the state personnel system noted above, under Taylor's own analysis, at best, any declaration could only state that CDPHE should have established her position as a classified position, despite the undisputed lack of an FTE, and that Taylor should have been permitted to compete for that position. Such a remedy would serve no purpose, however, because it would merely give rise to speculation as to whether CDPHE could somehow have created the FTE, and, if it could, whether Taylor would have been hired and, if she were, whether she would have been retained after satisfactory completion of her probationary period or dismissed during such period for unsatisfactory performance.

Viewed in this light, it is difficult to see how Taylor suffered any injury here. On the one hand, she was employed for many years, notwithstanding the lack of an FTE and the fact that she did not have to compete in the state merit-based system. On the other hand, the logical conclusion of Taylor's own analysis seems to be that her contract was void ab initio. *See* Ch. 244, sec. 2, § 24–50–128(3), 1979 Colo. Sess. Laws 947–48 (declaring then existing state policy against personal service contracts that created an employer-employee relationship where the duties of such positions were classified and where such duties were commonly or historically performed by employees in regular positions under the state personnel system, and providing that personal service contracts that were not approved in accordance with this section "shall be deemed void from the beginning, and the person appointed to such position shall be immediately terminated"). Either way, Taylor was in a better position than she otherwise would have been in.

### D. Legislative Intent is Contrary to Taylor's Requested Declaration

Finally, although Taylor requests a declaration that section 24–50–136(1), C.R.S.2009, is inapplicable, that statute reflects a clear legislative intent that is contrary to the remedy that Taylor is seeking here. Section 24–50–136(1) provides, in relevant part:

> Whenever a person currently or previously employed by the state of Colorado, not within the state personnel system, enters or is brought into the state personnel system, the person shall be credited with his or her former state service for purposes of accumulated leave, leave earning rates, seniority, and other benefits, *excluding retirement credit,* afforded an employee in the state personnel system.

*Id.* (emphasis added). This statute evinces a clear legislative intent that a person previously employed by the state but not in the personnel system is not entitled to retire-

ment credit when he or she enters the system. Taylor, however, makes clear that this is precisely the remedy that she is ultimately seeking. Moreover, although Taylor asserts that she is entitled to a declaration that this provision should not apply to her because she should have been brought into the state personnel system before the statute was enacted, she makes no argument and cites no authority in support of her entitlement to such a declaration. *See Erskine,* 197 P.3d at 232 (declining to address contention that was unsupported by argument or citation of authority).

### IV.   Conclusion

For these reasons, we conclude that, as a matter of law, Taylor is not entitled to the remedy that she is seeking in this case.

Accordingly, the order is affirmed.

Judge BOORAS and Judge CRISWELL * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.