1 

2025 CO 64
 In Re The People of the State of Colorado by and through the People of the City of Westminster, Plaintiff v. Aleah Michelle Camp. Defendant 
 In Re The People of the State of Colorado by and through the City of Aurora, Plaintiff v. Danielle Ashley Simons. Defendant 
Nos. 24SA276, 24SA308, 24SA309
Supreme Court of Colorado, En Banc
December 22, 2025
 ADVANCE SHEET HEADNOTE 
 The supreme court reviews whether state law preempts municipal law when setting maximum sentences for certain non-felony offenses. Specifically, it considers whether home-rule municipalities may sentence offenders in excess of the statutory sentencing caps in sections 18-1.3-501(1)(a.5), C.R.S. (2025), and 18-1.3-503(1.5), C.R.S. (2025), when the offender violates a municipal ordinance that corresponds to a state offense prohibiting identical conduct. Applying a preemption analysis, the supreme court holds that when a municipal ordinance and a state statute prohibit identical conduct, the municipal penalties for such conduct may not exceed the corresponding state penalties for that conduct. Accordingly, while an individual may be prosecuted in municipal court for their ordinance violation, they may not be subjected to penalties that exceed the state caps for the corresponding offenses. The supreme court makes the orders to show cause absolute and remands for further proceedings consistent with this opinion. 
 Original Proceeding Pursuant to C.A.R. 21 Municipal Court, City of Westminster, Case No. 2022-002574-MO Honorable Rebekah B. Watada, Municipal Court Judge 
 
2

 Original Proceeding Pursuant to C.A.R. 21 Municipal Court, City of Aurora, Case Nos. J316178 & J317516 Honorable Shelby L. Fyles, Municipal Court Judge 
 Attorneys for Plaintiffs the People of the State of Colorado by and through the City of Westminster and the People of the State of Colorado by and through the City of Aurora, and Respondent Westminster Municipal Court: Berg Hill Greenleaf Ruscitti LLP Josh A. Marks Christopher G. Seldin Boulder, Colorado 
 Attorneys for Defendant Aleah Michelle Camp: Gibson, Dunn & Crutcher LLP Robert C. Blume Al Kelly NoahLani Litwinsella Denver, Colorado Britt, Tshering & Wang, LLC Yun Wang Denver, Colorado 
 Attorneys for Defendant Danielle Ashley Simons: Appeal to Justice LLC Amy D. Trenary Broomfield, Colorado Power Law LLC Ashley Cordero Denver, Colorado 
 Attorneys for Amici Curiae ACLU of Colorado and Colorado Freedom Fund (24SA276): 
 
3

 Timothy R. Macdonald Emma Mclean-Riggs Denver, Colorado Dana Steiner Denver, Colorado 
 Attorneys for Amicus Curiae Colorado Criminal Defense Bar Wheeler Trigg O'Donnell LLP William D. Hauptman Carolyn M. Welter Elizabeth Poche Denver, Colorado 
 Attorneys for Amicus Curiae Colorado Municipal League Robert D. Sheesley Rachel Bender Denver, Colorado 
 Attorneys for Amici Curiae Denver District Attorney and Denver City Attorney Beth McCann, District Attorney, Second Judicial District Anya Havriliak, Deputy District Attorney Denver, Colorado Katie McLoughlin, Acting Denver City Attorney Denver, Colorado 
 Attorneys for Amici Curiae Denver Office of the Municipal Public Defender and Aurora Public Defender's Office Colette Tvedt, Chief Public Defender Rachel K. Mercer, Senior Deputy Public Defender Denver, Colorado Elizabeth D. Cadiz, Chief Public Defender Dustin J. Klein, Deputy Public Defender III Aurora, Colorado 
 
4

 JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined. JUSTICE HART did not participate. 
 OPINION 
 MARQUEZ, CHIEF JUSTICE 
 
5

 ¶1 The Colorado Constitution grants home-rule municipalities the authority to regulate issues of local concern, including the power to enact ordinances and enforce penalties through municipal courts. Colo. Const. art. XX, § 6(c), (h). In reliance on this constitutional authority, many home-rule municipalities have enacted local ordinances that criminalize the same conduct proscribed by state statutes. As a result, an individual who engages in certain criminal conduct in a home-rule municipality may be charged with either a municipal violation or a state offense. The question before us is whether an individual charged with a municipal violation may face a harsher penalty than the one available under a state statute for the same offense. 
 ¶2 In these original proceedings under C.A.R. 21, we are asked to consider whether state law preempts municipal law when a municipality's penalties for certain non-felony offenses exceed the maximum sentences prescribed by the state for the same offenses. Specifically, we consider whether home-rule municipalities may sentence offenders in excess of the statutory sentencing caps in section 18-1.3-501(1)(a.5), C.R.S. (2025) (setting sentencing caps for misdemeanors), and section 18-1.3-503(1.5), C.R.S. (2025) (setting the sentencing cap for petty offenses), when the offender violates a municipal ordinance that corresponds to a state offense prohibiting identical conduct. 
 
6

 ¶3 We hold that when a municipal ordinance and a state statute prohibit identical conduct, the municipal penalties for such conduct may not exceed the corresponding state penalties for that conduct. First, we conclude that the regulation of low-level criminal conduct is a matter of mixed statewide and local concern. Municipalities have an interest in holding offenders accountable for such conduct by penalizing ordinance violations within their jurisdictions. At the same time, the state has an interest in ensuring that maximum penalties are consistent across Colorado. Because these cases present an issue of mixed state and local concern, we consider whether the operational effect of the local law conflicts with the application of state law. City of Longmont v. Colo. Oil &Gas Ass'n, 2016 CO 29, ¶ 36, 369 P.3d 573, 582. State law preempts a local law when the effectuation of the local interest materially impedes the state's interest. Id. at ¶ 37, 369 P.3d at 582. A local ordinance that authorizes what state law forbids or that forbids what state law authorizes will necessarily satisfy this standard. Id. at ¶ 42, 369 P.3d at 583. 
 ¶4 Next, applying this framework, we conclude that to the extent the challenged municipal sentencing provisions authorize harsher penalties than state law permits for identical conduct, they are preempted by state law. Because the challenged provisions authorize what state law forbids, they materially impede the state's interest in ensuring that maximum penalties for non-felony offenses are consistent and uniform across Colorado. 
 
7

 ¶5 In sum, home-rule municipalities may not authorize harsher sentences than state law allows for an identical offense. Because the municipal ordinances challenged here are preempted by state law to the extent they authorize penalties exceeding state caps for identical conduct, Petitioners Aleah Michelle Camp and Danielle Ashley Simons may be prosecuted in municipal court for their respective ordinance violations, but they may not be subjected to penalties that exceed the state caps for the corresponding state offenses. Accordingly, we make the orders to show cause absolute and remand the cases for further proceedings consistent with this opinion.[1] 
 I. Factual Background 
 ¶6 In 2021, the General Assembly enacted Senate Bill 271 ("the Misdemeanor Reform Act" or "the Act"), which brought sweeping changes to Colorado's sentencing laws for non-felony offenses. The Misdemeanor Reform Act condensed misdemeanor classifications from three levels into two levels and petty offense classifications from two levels into one level. Ch. 462, secs. 186-87, §§ 18-1.3-501(1)(a.5), -503(1.5), 2021 Colo. Sess. Laws 3122, 3170-71. The Act also reduced the penalties for numerous offenses - including, as relevant here, for theft 
 
8

 and trespass.[2] Ch. 462, secs. 205, 212-13, §§ 18-4-401, -503, -504, 2021 Colo. Sess. Laws 3122, 3176-79. 
 ¶7 Following the passage of the Misdemeanor Reform Act, certain municipal penalties are now significantly harsher than state penalties for identical conduct. Pointing to this discrepancy, two individuals charged with municipal offenses separately petitioned this court for C.A.R. 21 review, arguing that state sentencing caps for low-level theft and trespass preempt municipal penalties for the identical conduct. 
 A. In re People v. Camp 
 ¶8 The City of Westminster charged Camp with theft of less than $500 under section 6-3-1(A)(1) of its municipal code. City of Westminster, Colo., Mun. Code, tit. VI, ch. 3, § 6-3-1(A)(1). (Westminster has since clarified that the value allegedly stolen was less than $300.) 
 ¶9 Camp moved to dismiss the charges against her, contending that section 6-3-1 and its corresponding penalty provision, section 1-8-1, id. at tit. I, ch. 8, § 1-8-1(A), are preempted by state law. Specifically, she argued that the regulation of theft is either a matter of statewide concern or of mixed local and statewide 
 
9

 concern, and that following the passage of the Misdemeanor Reform Act, Westminster's sentencing ordinance conflicts with state law. 
 ¶10 Camp observes that section 6-3-1(A)(1) of the Westminster Municipal Code and section 18-4-401(1)(a), C.R.S. (2025), prohibit identical conduct: 
 

 
 
 
 Theft: Westminster Municipal Code 
 
 
 Theft: State Statute 
 
 
 
 
 Knowingly 
 
 
 Knowingly 
 
 
 
 
 Obtains or exercises control over anything of value of another 
 
 
 Obtains, retains, or exercises control over anything of value of another 
 
 
 
 
 Without authorization, or by threat or deception 
 
 
 Without authorization or by threat or deception[3] 
 
 
 
 
 Intends to deprive the other person permanently of the use or benefit of the thing of value 
 
 
 Intends to deprive the other person permanently of the use or benefit of the thing of value 
 
 
 
 
 Where the value of the thing involved is less than $1,000 
 
 
 A petty offense if the value of the thing involved is less than $300 
 A class 2 misdemeanor if the value of the thing involved is $300 or more but less than $1,000 
 
 
 
 

 
10

 ¶11 Yet, Camp points out, the two offenses have significantly different penalties. Under state law, theft between $300 and $1,000 is a class 2 misdemeanor with a maximum punishment of 120 days' imprisonment, a $750 fine, or both. § 18-1.3-501(1)(a.5); § 18-4-401(2)(c). And, as she notes on appeal,[4] state law provides that theft under $300 is a petty offense with a maximum punishment of ten days' imprisonment, a $300 fine, or both. § 18-1.3-503(1.5); § 18-4-401(2)(b). By contrast, under section 1-8-1 of the Westminster Municipal Code, the maximum penalty for theft of any amount under $1,000[5] is 364 days' imprisonment, a $2,650 fine, or both. City of Westminster, Colo., Mun. Code, tit. I, ch. 8, § 1-8-1(A); id. at tit. VI, ch. 3, § 6-3-1(I). Thus, for Camp, who is charged with theft involving an amount under $300, Westminster's Code authorizes penalties of up to thirty-six times the length of imprisonment and about nine times the amount of fines permitted by state statute for the same conduct. 
 
11

 ¶12 The Westminster Municipal Court denied Camp's motion in a written order. The court noted that although the Misdemeanor Reform Act changed sentencing for state non-felony offenses, the Act "did not impact how municipalities handle the crime of theft." The court determined that "theft and sentencing in municipalities that differs from the state classification remains a mixed concern and is not preempted by state sentencing guidelines." In so doing, the court relied on article XX, section 6 of the Colorado Constitution and Quintana v. Edgewater Municipal Court, 498 P.2d 931, 932 (Colo. 1972), for its conclusion that home-rule municipalities retained the authority to enact and enforce local ordinances regulating low-level theft. See Quintana, 498 P.2d at 932 (observing that non-felony theft "constitutes a great problem and should be combated not only by our state authorities in state courts, but by our police departments in municipal courts"). It also relied on City of Aurora v. Martin, 507 P.2d 868, 870 (Colo. 1973), which observed that "[e]xcept in felony categories, mere difference in penalty provisions in a statute and ordinance does not necessarily establish a conflict." The court concluded that because section 18-4-401(8) states that "[a] municipality shall have concurrent power to prohibit theft, by ordinance, where the value of the thing involved is less than [$1,000]," Westminster's penalties for theft were not preempted by state law. The case proceeded to trial, and Camp was convicted. 
 
12

 After the court continued her sentencing hearing, Camp petitioned this court for relief under C.A.R. 21. 
 B. In re People v. Simons 
 ¶13 The City of Aurora charged Simons in case no. J316178 with motor vehicle trespass under section 94-83 of the Aurora City Code. City of Aurora, Colo., Mun. Code, ch. 94, art. III, § 94-83. A few months later, the City charged Simons in case no. J317516 with trespass under section 94-71(a)(6) of the Aurora City Code. Id. at ch. 94, art. III, § 94-71(a)(6). 
 ¶14 Simons moved to dismiss the charges in both cases arguing, in part, that sections 94-71(a)(6) and 94-83, and their corresponding penalty provision, section 1-13(a), id. at ch. 1, art. I, § 1-13(a), are preempted by state law. Specifically, she asserted that sentencing for low-level offenses is a matter of mixed local and statewide concern, and Aurora's municipal sentencing scheme conflicts with state law. 
 ¶15 Simons points out that motor vehicle trespass under section 94-83 of the Aurora City Code prohibits the same conduct as second degree criminal trespass under section 18-4-503(1)(c), C.R.S. (2025): 
 
13

 

 
 
 
 Motor Vehicle Trespass: Aurora City Code 
 
 
 Second Degree Criminal Trespass: State Statute 
 
 
 
 
 Knowingly 
 
 
 Knowingly 
 
 
 
 
 And unlawfully 
 
 
 And unlawfully 
 
 
 
 
 Enters or remains in a motor vehicle of another 
 
 
 Enters or remains in a motor vehicle of another 
 
 
 
 

 ¶16 Simons also notes that trespass under section 94-71(a)(6) of the Aurora City Code prohibits the same conduct as third degree criminal trespass under section 18-4-504(1), C.R.S. (2025): 
 
 
 
 
 Trespass: Aurora City Code 
 
 
 Third Degree Criminal Trespass: State Statute 
 
 
 
 
 Without being licensed, invited by a person with authority, or otherwise privileged 
 
 
 Unlawfully[6] 
 
 
 
 
 Enters or remains in or upon premises of another 
 
 
 Enters or remains in or upon premises of another 
 
 
 
 
 ¶17 Simons argues that although these provisions prohibit identical conduct, the maximum penalties under local law greatly exceed the caps under state law. As a 
 
14

 class 2 misdemeanor, § 18-4-503(2)(b), the maximum sentence for second degree criminal trespass under state law is 120 days' imprisonment, a $750 fine, or both. § 18-1.3-501(1)(a.5). And as a petty offense under section 18-4-504(2), the maximum sentence for third degree criminal trespass is ten days' imprisonment, a $300 fine, or both. § 18-1.3-503(1.5). By contrast, the maximum penalties under the Aurora City Code for these offenses are 364 days' imprisonment, a $2,650 fine, or both. City of Aurora, Colo., Mun. Code, ch. 1, art. I, § 1-13(a). In other words, Simons faces penalties significantly in excess of those permitted by state statute for the same conduct. 
 ¶18 In a written order, the Aurora Municipal Court denied Simons's motions to dismiss in both cases. Like the Westminster Municipal Court, the Aurora Municipal Court relied on Martin for the proposition that a difference in penalty provisions does not necessarily establish a conflict between state and local law. See Martin, 507 P.2d at 870. It also relied on People v. Wade, 757 P.2d 1074, 1076 (Colo. 1988), which stated that "a city's choice of a sentencing scheme different from the state's is well within the city's constitutional power as a home rule city." 
 
15

 ¶19 The Aurora Municipal Court further observed that section 13-10-113(1)(a), C.R.S. (2025), generally authorizes municipal penalties of up to 364 days' imprisonment, a $2,650 fine, or both. The court noted that the Misdemeanor Reform Act did not amend section 13-10-113(1)(a); indeed, the Act was silent on municipal ordinance violations. Reasoning that the penalties under the Aurora City Code for motor vehicle trespass and trespass are consistent with section 13-10-113(1)(a), and construing Martin and Wade to mean that a discrepancy in sentencing maximums alone does not result in an operational conflict, the court ruled that Aurora's penalties were not preempted by state law. 
 ¶20 Before trial in either matter, Simons petitioned this court for relief under C.A.R. 21.[7] 
 II. Original Jurisdiction 
 ¶21 The decision to exercise original jurisdiction under C.A.R. 21 lies wholly within our discretion. C.A.R. 21(a)(2). However, "[r]elief under this rule is extraordinary in nature" and "will be granted only when no other adequate remedy is available." Id. Mindful that this scope is narrow, "we have exercised our jurisdiction pursuant to C.A.R. 21 when an appellate remedy would be 
 
16

 inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises 'issues of significant public importance that we have not yet considered.'" People v. Subjack, 2021 CO 10, ¶ 12, 480 P.3d 114, 117 (quoting People v. Rowell, 2019 CO 104, ¶ 9, 453 P.3d 1156, 1159). 
 ¶22 Both Camp and Simons may suffer irreparable harm because it is possible that they could serve most, if not all, of any sentences imposed before any appeal could be resolved. This possibility also renders the ordinary appellate process inadequate. See In re People in Int. of S.G.H., 2025 CO 59, ¶ 22, 578 P.3d 505, 510. 
 ¶23 In addition, this is both a novel and recurring issue. In fact, we granted review of the same preemption issue in City of Rifle v. Mobley, (Colo. No. 23SA289, Dec. 14, 2023) (unpublished order), but ultimately dismissed that case as moot. 
 ¶24 We therefore exercise our original jurisdiction under C.A.R. 21. 
 III. Analysis 
 ¶25 Whether state law preempts a municipal ordinance is a question of law that we review de novo. Webb v. City of Black Hawk, 2013 CO 9, ¶ 16, 295 P.3d 480, 486. ¶26 For purposes of the preemption analysis, we must first determine whether sentencing non-felony criminal offenses is a matter of state, local, or mixed local and statewide concern. After concluding that this issue presents a matter of mixed concern, we turn to the three tests for preemption and hold that the challenged municipal ordinances are preempted by state law to the extent that they authorize 
 
17

 harsher penalties than state law permits for identical conduct. Applying this conclusion to the cases before us, we hold that although Camp and Simons may be prosecuted in municipal court for their respective ordinance violations, they may not be subjected to penalties that exceed the state caps for the corresponding state offenses. 
 A. Sentencing of Low-Level Criminal Conduct Presents an Issue of Mixed Local and Statewide Concern 
 ¶27 The first step in the preemption analysis is to determine whether the regulatory matter is one of state, local, or mixed local and statewide concern. Colo. Oil & Gas Ass'n, ¶ 19, 369 P.3d at 579. In doing so, "we weigh the relative interests of the state and the municipality in regulating the particular issue in the case, making the determination on a case-by-case basis considering the totality of the circumstances based on the enumerated factors and any other factors we deem relevant." Webb, ¶ 19, 295 P.3d at 486-87. We consider "(1) the need for statewide uniformity of regulation; (2) the extraterritorial impact of local regulation; (3) whether the matter has traditionally been regulated at the state or local level; and (4) whether the Colorado Constitution specifically commits the matter to state or local regulation." Id., 295 P.3d at 486. 
 ¶28 We have consistently held that the regulation of non-felony criminal offenses is a matter of mixed local and statewide concern. Martin, 507 P.2d at 869; Quintana, 498 P.2d at 932. And after weighing the relevant factors here, we 
 
18

 conclude by extension that the establishment of penalties for such offenses is likewise a matter of mixed concern. 
 ¶29 We begin with the first factor, the need for statewide uniformity of regulation. We have observed that "although uniformity in itself is no virtue, it is necessary 'when it achieves and maintains specific state goals.'" Colo. Oil & Gas Ass'n, ¶ 21, 369 P.3d at 580 (quoting City of Northglenn v. Ibarra, 62 P.3d 151, 160 (Colo. 2003)). While the sentencing caps in sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5) suggest that the state has an interest in ensuring consistency for non-felony sentences across the state, it is likewise true that municipalities have an interest in responding to the particular needs of their jurisdictions when it comes to deterring and punishing crime. 
 ¶30 We have never held that there is an inherent need for state and municipal sentences to be uniform. To the contrary, we have allowed home-rule municipalities to enact penalties that differ, in certain ways, from state sentences. See Martin, 507 P.2d at 870 (holding that the state's harsher sentence for assault and battery did not preempt a lesser municipal sentence). As noted by the municipal courts below, we have held that certain non-felony offenses "constitute[] a great problem and should be combated not only by our state authorities in state courts, but by our police departments in municipal courts." Quintana, 498 P.2d at 932. 
 
19

 Accordingly, when it comes to establishing penalties for low-level crimes, there is not an inherent need for statewide uniformity. 
 ¶31 Turning to the second factor, a local regulation can have an extraterritorial impact when the municipality's ordinance has "a ripple effect impacting state residents outside the municipality," Webb, ¶ 34, 295 P.3d at 490, and that impact is more than incidental or de minimis, Ibarra, 62 P.3d at 161. We also consider the expectations of state residents. Walgreen Co. v. Charnes, 819 P.2d 1039, 1047 (Colo. 1991). Relevant here, we have rejected the argument that an ordinance lacks extraterritorial effect simply because an individual has subjected themselves to the municipality's jurisdiction. City of Com. City v. State, 40 P.3d 1273, 1282 (Colo. 2002). 
 ¶32 The municipal ordinances at issue here plainly have extraterritorial impact. Both Camp and Simons live outside the municipalities where they have been charged. Camp was charged in Westminster but resides in Thornton, and Simons was charged in Aurora but resides in Littleton. Moreover, the potential sentences Camp and Simons face are not incidental or de minimis. Camp and Simons each face up to 364 days of incarceration and fines of $2,650, which are significantly harsher penalties than they would face if charged with a corresponding state offense. Allowing each municipality to impose its own sentencing scheme, one that may authorize penalties exceeding state sentencing caps for identical conduct, 
 
20

 "creat[es] a patchwork of local and state rules contrary to the state legislation's wording and intent." Webb, ¶ 37, 295 P.3d at 491. We therefore conclude that the extraterritorial reach of the ordinances weighs in favor of statewide concern. 
 ¶33 Third, we consider whether the matter has traditionally been regulated at the state or local level. Here, both the state and municipalities have long regulated low-level offenses and sentences.[8] See, e.g., Colo. G.L. 1877, ch. 24, §§ 596(1), 794(194) (defining crimes and misdemeanors in Colorado's first enacted statutes and stating that "[a]ll offenses herein defined shall be prosecuted and punished as herein prescribed, and not otherwise, and all other offenses may be punished by fine and imprisonment"); Hughes v. People, 9 P. 50, 52 (Colo. 1885) (noting municipalities' power to regulate certain offenses, including that the legislature has given municipal authorities the power "to prevent and suppress riots, routs, affrays, noises, disturbances, [and] disorderly assemblies in any public or private 
 
21

 place" (quoting Colo. G.S. 1883, ch. 109, § 3312(14) (forty-second)); Colo. G.S. 1883, ch. 109, § 3313(15) ("Municipal corporations shall have power to make and publish . . . ordinances not inconsistent with the laws of the State . . . and to enforce obedience to such ordinances by fine not exceeding [$300], or by imprisonment not exceeding ninety days."). Thus, since Colorado's early days of statehood, both the state and municipalities have regulated and punished low-level offenses. This factor weighs in favor of mixed statewide and local concern. 
 ¶34 Finally, we turn to the fourth factor, which is whether the Colorado Constitution specifically commits the matter to state or local regulation. Here, the Colorado Constitution gives both the state and home-rule municipalities the authority to penalize non-felony offenses. Article III and article V, section 1(1) of the Colorado Constitution vest the General Assembly with the power to enact laws. And article XX, sections 6(c) and (h) of the Colorado Constitution give homerule municipalities the authority to impose and enforce penalties for ordinance violations through municipal courts. See Martin, 507 P.2d at 870 ("[T]he authority for the city's assault and battery ordinance emanates from Colo. Const. art. XX, § 6."). Thus, this factor also weighs in favor of mixed statewide and local concern. 
 ¶35 After reviewing each factor, we conclude that the establishment of penalties for low-level criminal conduct is a matter of mixed statewide and local concern. Although the extraterritorial reach of local regulations implicates statewide 
 
22

 concerns, both the state and municipalities have express constitutional authority to regulate in this area, both have done so historically, and both have important interests in this area. We therefore turn to the three forms of preemption to determine whether there is a conflict between state law and the local sentencing schemes at issue here. 
 B. Forms of Preemption 
 ¶36 When a regulatory issue is of mixed concern, state law preempts a conflicting local regulation. Colo. Oil &Gas Ass'n, ¶ 32, 369 P.3d at 581-82. This is true regardless of whether a statutory county or town or a home-rule municipality enacted the regulation because "in both cases, the validity of the local enactment turns on whether it conflicts with or is preempted by state law." Id., 369 P.3d at 582. 
 ¶37 There are three forms of preemption: express, implied, and operational conflict preemption. Id. at ¶ 33, 369 P.3d at 582. A finding of any of these forms of preemption renders the local regulation invalid. See id. at ¶¶ 32, 43, 369 P.3d at 581-83. 
 ¶38 First, state law may expressly preempt a local ordinance if "the legislature clearly and unequivocally states its intent to prohibit a local government from exercising its authority over the subject matter at issue." Id. at ¶ 34, 369 P.3d at 582. 
 
23

 ¶39 Second, state law preempts a local ordinance when "the state statute impliedly evinces a legislative intent to completely occupy a given field by reason of a dominant state interest." Bd. of Cnty. Comm'rs v. Bowen/Edwards Assocs., Inc., 830 P.2d 1045, 1056-57 (Colo. 1992). The enactment of a state statute alone does not imply legislative intent to preempt local control, but instead we must "consider the language used and the scope and purpose of the legislative scheme." Colo. Oil &Gas Ass'n, ¶ 35, 369 P.3d at 582. 
 ¶40 The third variety of preemption occurs when an ordinance's "operational effect would conflict with the application of the state statute." Bowen/Edwards, 830 P.2d at 1057. This may arise when the "effectuation of a local interest would materially impede or destroy a state interest." Colo. Oil &Gas Ass'n, ¶ 42, 369 P.3d at 583. A local ordinance that authorizes what state law forbids or that forbids what state law authorizes will necessarily satisfy this standard. Id. 
 ¶41 With these principles in mind, we next turn to whether state law preempts the local sentencing schemes at issue here. 
 C. Municipal Ordinances Authorizing Penalties That Exceed State Sentencing Caps Create an Operational Conflict with State Law 
 ¶42 As a preliminary matter, the parties do not contend, nor does the Misdemeanor Reform Act's language provide grounds to conclude, that the General Assembly has clearly and unequivocally prohibited municipalities from 
 
24

 regulating sentencing for low-level offenses. Thus, express preemption is not at issue here. Similarly, the parties do not argue, nor does the Misdemeanor Reform Act imply, that the General Assembly intended it to occupy the field of sentencing for low-level offenses. So, implied preemption is not at issue in these cases either. 
 ¶43 This brings us to whether the municipal ordinances are operationally preempted. This analysis involves facially evaluating the interplay of the state and local regulatory schemes, "not a factual inquiry as to the effect of those schemes 'on the ground.'" Id. 
 ¶44 Turning to the statutory schemes, sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5) set sentencing caps for misdemeanors and petty offenses under state law. Section 18-1.3-501(1)(a.5) allows the following penalties for misdemeanors committed on or after March 1, 2022:[9] (1) for class 1 misdemeanors - up to 364 days' imprisonment, a $1,000 fine, or both; and (2) for class 2 misdemeanors - up to 120 days' imprisonment, a $750 fine, or both. Section 18-1.3-503(1.5) allows a petty offense committed on or after March 1, 2022, to be penalized by up to ten days' imprisonment, a $300 fine, or both. These sentencing 
 
25

 caps create uniform and consistent statewide penalties for misdemeanor and petty offenses.[10] 
 ¶45 Westminster and Aurora emphasize that neither the Misdemeanor Reform Act nor its legislative history mentions preemption of municipal regulation of low-level offenses. But such silence only confirms the absence of express or implied preemption; it does not foreclose the possibility of operational conflict preemption. See Colo. Oil &Gas Ass'n, ¶¶ 44-48, 369 P.3d at 583-84. Put differently, evidence of the state's intent to preempt local government (whether express or implied) is 
 
26

 not required to determine the existence of an operational conflict.[11] Instead, the question when analyzing whether an operational conflict exists is whether the local regulation materially impedes the state's interest; this can be established by showing that the local regulation authorizes what state law forbids or forbids what state law authorizes. Id. at ¶ 42, 369 P.3d at 583. 
 ¶46 We turn to that question next, asking whether the state's interest in setting consistent, statewide sentencing caps for misdemeanors and petty offenses is materially impeded by municipal ordinances that authorize penalties exceeding the penalties the state allows for identical offenses. 
 ¶47 We first observe that when municipal and state law prohibit identical conduct, a municipal penalty that exceeds the penalties permitted by the state necessarily "authorizes what state statute forbids." Webb, ¶ 43, 295 P.3d at 492. In so doing, the municipal penalty materially impedes the state's interest in ensuring that maximum penalties for such conduct are consistent and uniform across 
 
27

 Colorado.[12] Thus, the municipal provisions create an operational conflict with state law. Because of this operational conflict, we conclude that the municipal penalties may not exceed the maximum penalties established by sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5). 
 ¶48 Westminster and Aurora contend that such a conclusion undermines our precedent and runs contrary to the statutory scheme. We take each contention in turn. 
 ¶49 First, although the municipalities argue that our precedent establishes that the state and home-rule municipalities may have different penalties for the same low-level offenses, our conclusion today is entirely consistent with our previous holdings. 
 ¶50 In Quintana, we considered whether a municipal shoplifting ordinance prohibiting all theft regardless of the value of the item stolen was invalid in light of a theft statute that delineated misdemeanor and felony theft based on the value of the item stolen. 498 P.2d at 932. We concluded that because the shoplifting 
 
28

 ordinance was not limited to low-level amounts, it attempted to regulate felony theft, a matter "exclusively within the jurisdiction of our district courts." Id. at 932. Because the ordinance went beyond local and municipal matters, it exceeded the municipality's constitutional authority under article XX, section 6 of the Colorado Constitution. Id. at 933. While noting that the problem of shoplifting may be regulated by both the state and municipalities, id. at 932, the issue of disparate penalties was not before us in that case. Instead, we made the unremarkable observation that only the state may regulate felonies. Id. at 932-33. 
 ¶51 Neither Westminster's nor Aurora's ordinances at issue here invade the state's exclusive jurisdiction over felonies. Additionally, our observation about municipalities' concurrent power to regulate misdemeanor theft did not suggest that municipalities may impose higher penalties than the state for such conduct. Thus, Quintana is distinguishable. 
 ¶52 Martin is likewise distinguishable. There, we considered whether a statute that imposed a greater penalty for assault and battery preempted a municipal ordinance that imposed a lesser penalty for the same offense. Martin, 507 P.2d at 869. In doing so, we observed that "[t]here is nothing basically invalid about legislation on the same subject by both a home rule city and the state, absent some conflict between the two regulations." Id. Examining the state statute at issue, we concluded that there was no express or implied intent to preempt local regulation 
 
29

 of assault and battery. Id. at 870. We further concluded that the ordinance did not "authorize[] what the state forbids, or forbid[] what the state has expressly authorized." Id. at 869-70. Because we found no express, implied, or operational conflict, we held that the difference in penalty provisions between the state and local regulations was not "so great that the state's interest will not be protected by a proceeding under the municipal ordinance." Id. at 870. 
 ¶53 Martin makes clear that "[t]here is nothing basically invalid about legislation on the same subject by both a home rule city and the state, absent some conflict between the two regulations." Id. at 869. Here, however, a conflict does exist: Westminster's and Aurora's ordinances authorize significantly harsher penalties than the state allows for petty offenses under section 18-1.3-503(1.5) and for class 2 misdemeanors under section 18-1.3-501(1)(a.5). That is, the municipal penalties that Camp and Simons face exceed the maximum penalties allowed by state law. In contrast to the ordinance at issue in Martin, the municipal ordinances here do conflict with state law because they expressly "authorize[] what the state forbids," Martin, 507 P.2d at 869-70, and thus materially impede the state's interest in consistent statewide sentences under the Misdemeanor Reform Act. 
 ¶54 Finally, our conclusion today does not conflict with our holding in Wade. There, the defendant was convicted of operating an unsafe automobile in violation of a Denver ordinance. Wade, 757 P.2d at 1075. The court sentenced him to one 
 
30

 year of probation, a term that exceeded the 180-day maximum jail term for the offense. Id. Although Denver's municipal code allowed for such a sentence, on appeal, the district court observed that under the state sentencing scheme, a defendant may not be sentenced to a term of probation that is longer than the maximum term of imprisonment for the particular offense.[13] Id. at 1075-76. Relying on Martinez v. Kirbens, 710 P.2d 1138 (Colo.App. 1985), the district court ruled that Denver's sentencing scheme must be consistent with the state's "philosophy in sentencing." Wade, 757 P.2d at 1075-76. 
 ¶55 On certiorari review, we reversed and held that article XX, section 6 of the Colorado Constitution vested home-rule municipalities with the power to "impose its own system of punishments for violations of its ordinances," so municipalities were not required to follow the state's "philosophy in sentencing." Id. at 1077. In so doing, we recognized a municipality's fundamental power to enact criminal legislation and to choose a sentencing scheme different from the 
 
31

 state's. Id. at 1076. However, nothing in Wade suggested that a municipality may impose harsher penalties than the state allows for identical conduct. 
 ¶56 Next, we are not persuaded by Westminster's and Aurora's arguments that there is no conflict here because the ordinances are consistent with municipalities' general sentencing authority under section 13-10-113(1)(a) and section 31-16-101(1)(a), C.R.S. (2025), which authorize municipalities to penalize an individual with up to 364 days' incarceration, a $2,650 fine, or both. However, these general sentencing limits do not allow municipalities to authorize penalties that state law expressly prohibits for particular conduct. 
 ¶57 In other words, when a municipality regulates an offense for which there is no identical state counterpart, the state's misdemeanor and petty offense sentencing caps under sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5) do not apply; rather, the municipality has the power to impose a maximum sentence allowed by the general cap in sections 13-10-113(1)(a) and 31-16-101(1)(a). But when municipalities regulate conduct for which there exists an identical state misdemeanor or petty offense, they may not exceed the specific sentencing caps in sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5). 
 ¶58 Westminster also argues that its sentencing scheme for theft is not preempted because section 18-4-401(8) provides that "[a] municipality shall have concurrent power to prohibit theft, by ordinance, where the value of the thing 
 
32

 involved is less than [$1,000]." But this section simply codifies the well-accepted rule that municipalities may concurrently regulate non-felony theft, which long involved values under $1,000. See Quintana, 498 P.2d at 932; see also Ch. 373, sec. 1, § 18-4-401(2), 2013 Colo. Sess. Laws 2195, 2195-96 (amending the theft statute by increasing the felony threshold amount from $1,000 to $2,000, without altering section 18-4-401(8)'s grant of concurrent jurisdiction over theft of less than $1,000). Allowing municipalities to regulate non-felony theft does not detract from the state's interest in setting specific sentencing caps for degrees of theft in sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5). Put differently, although Westminster may regulate non-felony theft alongside the state, it may not undermine the state's interest in consistent sentences by authorizing penalties that state law forbids. Because Westminster's sentencing scheme for theft undermines this interest, there is an operational conflict. 
 ¶59 In sum, we conclude that when state offenses and municipal offenses prohibit identical conduct, the maximum sentencing caps in sections 18-1.3-501(1)(a.5) and 18-1.3-503(1.5) preempt any municipal penalties that exceed those caps. 
 ¶60 This does not mean that the municipal charges against Camp and Simons must be dismissed. Home-rule municipal ordinances may only be "partially or totally preempted to the extent that they conflict with the achievement of the state 
 
33

 interest." Bowen/Edwards, 830 P.2d at 1059 (emphasis added). Without a finding of express, implied, or operational conflict in a matter of mixed local and statewide interest, there is no preemption when municipalities simply enact and enforce ordinances that prohibit the same conduct as the state prohibits. Martin, 507 P.2d at 869; Vela v. People, 484 P.2d 1204, 1206 (Colo. 1971). The conflict here is that the municipal penalties Camp and Simons face exceed the penalty caps that the state allows for identical state offenses and thus materially impede the state's interest in uniform and consistent sentences. Under this circumstance, the challenged municipal penalties are preempted to the extent that they exceed the state caps. 
 IV. Conclusion 
 ¶61 For the foregoing reasons, although Camp and Simons may be prosecuted in municipal court for their respective ordinance violations, they may not be subjected to penalties that exceed the state caps for the corresponding state offenses. We make the orders in the cases before us absolute and remand each case for further proceedings consistent with this opinion. 
 --------- 
 Notes: 
 [1] Because we rule that the ordinances before us are preempted by state law, we do not consider the parties' arguments under Colorado's equal protection doctrine. 
 [2] The Act also reclassified some offenses from misdemeanors to felonies. See, e.g., Ch. 462, sec. 197, § 18-3-402, 2021 Colo. Sess. Laws 3122, 3174. 
 [3] Section 18-4-401(1) alternatively defines theft as "receives, loans money by pawn or pledge on, or disposes of anything of value or belonging to another that he or she knows or believes to have been stolen." 
 [4] Westminster's clarification that the value of stolen goods was less than $300 came after Camp's motion to dismiss. 
 [5] At the time Camp was charged, section 6-3-1(A)(1) of the Westminster Municipal Code applied to the theft of goods worth less than $500. The Code was later amended to apply to goods worth less than $1,000. Compare City of Westminster, Colo., Mun. Code, tit. VI, ch. 3, § 6-3-1(A)(1) (June 30, 2022), with City of Westminster, Colo., Mun. Code, tit. VI, ch. 3, § 6-3-1(A)(1) (Sep. 27, 2022). Because the difference is immaterial to Camp's case, we refer to the current version of section 6-3-1(A)(1), which applies to the theft of goods worth less than $1,000. 
 [6] See § 18-4-201(3), C.R.S. (2025) (in the context of burglary, defining "enters unlawfully" and "remains unlawfully" as when a person "is not licensed, invited, or otherwise privileged to do so"); see also City of Aurora, Colo., Mun. Code, ch. 94, art. I, § 94-1 ("[T]he provisions in this chapter are subject to all applicable definitions . . . and presumptions provided by the Colorado Criminal Code (C.R.S. § 18-1-101 et seq.)."). 
 [7] Simons filed petitions in each of her underlying cases: 24SA308 (motor vehicle trespass case) and 24SA309 (trespass case). We consolidated the two cases for briefing and oral argument. 
 [8] Historically, we treated the violation of a municipal ordinance as a civil or, at best, quasi-criminal offense, notwithstanding the possible imposition of incarceration. See City of Greeley v. Hamman, 20 P. 1, 4 (Colo. 1888). This remained largely true despite the 1913 amendment to article XX, section 6 of the Colorado Constitution, which states that "[a]ny act in violation of the provisions of such [home-rule municipal] charter or of any ordinance thereunder shall be criminal and punishable as such when so provided by any statute now or hereafter in force." Ch. 166, Colo. Const. amend., art. XX, § 6, 1913 Colo. Sess. Laws 638, 669-71. We resolved this incongruity in 1958 in City of Canon Cityv. Merris, 323 P.2d 614, 620 (Colo. 1958), overruled on other grounds by, Vela v. People, 484 P.2d 1204, 1206 (Colo. 1971). There, we concluded that imprisonment for the violation of a municipal ordinance is a criminal sanction. Merris, 323 P.2d at 620. 
 [9] Section 18-1.3-501(1)(a.5) applies to misdemeanors committed on or after March 1, 2022, "[e]xcept as otherwise provided in subsection (1)(d)." Subsection (1)(d) concerns misdemeanor drug offenses, which are not at issue here. 
 [10] The state's intent to create uniform and consistent penalties for such offenses is reflected in the legislative history of the Misdemeanor Reform Act. In the summer of 2020, Governor Jared Polis sent a biennial letter to the Colorado Commission on Criminal and Juvenile Justice ("CCJJ"). Governor Polis's letter specifically asked the CCJJ to undertake sentencing reform to "[e]nsur[e] statewide consistency in the application of sentencing guidelines that mitigate the effects of individual discretion by system actors" and to limit incarceration to "the most serious cases." Letter from Jared Polis, Governor, State of Colo., to Stan Hilkey, Chair, Colo. Comm'n on Crim. and Juv. Just. (June 24, 2020), https: / / cdpsdocs.state.co.us/ccjj/ Resources/ Leg/Mandates/2020-06-24_GovPolis-2020BiennialLetter.pdf[https://perma.cc/MEJ4-HPQZ]. In response, the CCJJ drafted the Misdemeanor Reform Act with the aim of promoting "consistency and certainty in sentencing," looking to each of Colorado's misdemeanors and considering whether and to what degree incarceration was necessary. Hearing on S.B. 271 before the S. Judiciary Comm., 73d Gen. Assemb., 1st Sess. (May 19, 2021) (statements of Dist. Att'y Michael Dougherty, Colo. Comm'n on Crim. and Juv. Just.). 
 [11] Westminster and Aurora also assert that if the Misdemeanor Reform Act intended to preempt municipal sentences, it would have amended the statutes defining theft and trespass or amended sections 13-10-113(1)(a) and 31-16-101(1)(a), C.R.S. (2025) (defining municipalities' ordinance enforcement powers). But again, an intent to preempt is not necessary to determine the existence of an operational conflict. See Colo. Oil & Gas Ass'n, ¶ 42, 369 P.3d at 583. 
 [12] Westminster and Aurora suggest that holding municipal penalties to the state sentencing caps for misdemeanors and petty offenses subjects municipalities to state sentencing laws for traffic offenses, conflicting with section 42-4-110(2), C.R.S. (2025). We disagree. The conduct at issue here is governed by title 18, not title 42. The cities also assert that if the General Assembly intended to preempt municipal penalties, it would have amended section 42-4-110(2). But as already stated, an intent to preempt is not necessary to establish an operational conflict. 
 [13] In 2002, the General Assembly relocated the statute governing the probationary power of the court from section 16-11-202 to 18-1.3-202. Ch. 318, sec. 2, § 18-1.3-202, 2002 Colo. Sess. Laws 1365, 1376. In 2003, the General Assembly amended the statute to specify that the length of probation may exceed the maximum period of authorized incarceration for an offense. Ch. 134, sec. 13, § 18-1.3-202(1), 2003 Colo. Sess. Laws 972, 976. This remains the law today. § 18-1.3-202(1)(a), C.R.S. (2025). 
 ---------